In Interest of BABY GIRL W.

JUVENILE OFFICER, Respondent,

v.

M.J.F., Natural Father, Appellant.

No. WD 38353.

Missouri Court of Appeals,
Western District.

Feb. 10, 1987.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
March 31, 1987.

Application to Transfer Denied
May 19, 1987.

Patrick J. Eng, Sapp, Woods, Orr, Bley & Eng, Columbia, for appellant.

Leslie Ann Schneider, Brandecker and Smull, Columbia, for respondent.

Before CLARK, C.J., and DIXON and NUGENT, JJ.

CLARK, Chief Judge.

This is a proceeding to terminate parental rights to a baby girl born June 19, 1985. The mother, Nicole, voluntarily relinquished her rights pursuant to a pre-arranged adoption, but the father, M.J.F., resisted. After a hearing, the trial court ordered the rights of both parents terminated, those of the mother on the ground of her voluntary release, and those of the father on the statutory ground of abandonment. The father appeals.

The issue in the case, framed by the father's appeal, is whether the juvenile officer proved by clear, cogent and convincing evidence that the father abandoned the child in that he left the child without support and without communication or visitation. The evidence made no case of abandonment and we therefore reverse the judgment.

There was no dispute on the facts. Nicole became pregnant by appellant in October, 1984. When she informed appellant of the fact, he sought to marry her but she refused. Both were then age 18, they had neither income nor resources and Nicole did not wish to enter a marriage beset at commencement with economic distress. The parties were then in St. Louis where appellant's father had a home. To avoid further contact with appellant, Nicole said she was going to California to live with

grandparents. This was untrue and, unknown to appellant, Nicole went to Columbia, Missouri where the child was born the following June.

Apparently in contemplation of delivery of the child, Nicole made arrangements for adoption of the baby by a couple she knew. A relinquishment of her parental rights was signed by Nicole and, on the certificate of birth, she listed the child's father as unknown. The initial petition for termination of parental rights filed in this case reflected this information and, accordingly, did not name appellant as a party. The petition did refer to § 211.447.2(1), RSMo. Supp.1985[1] (then RSMo.Cum.Supp.1984), and abandonment as the basis for juvenile court jurisdiction, but the action was in furtherance of the previously arranged adoption.[2] On June 21, 1985, the court ordered custody of the infant given to the juvenile officer with direction that the child be placed in the prospective adoptive home. It appears the child has remained in that home.

Appellant was unaware of these proceedings or even that Nicole had given birth until sometime in July when he was contacted with the request that he relinquish his parental rights. That request followed a belated disclosure by Nicole of the identity of the baby's father. Appellant refused to relinquish his parental rights and on July 23, 1985, an amended petition was filed for termination naming appellant as the father. Inexplicably however, the petition sought no relief against appellant and made no allegations about him, save only the fact that he was the child's father. Despite the status of appellant as essentially a non-party to the case, the court on August 8, 1985, on a finding that appellant was indigent appointed counsel to represent him.

The second amended petition on which this case was ultimately tried was filed February 10, 1986. The juvenile officer alleged that appellant had abandoned the child and that parental rights should be terminated pursuant to § 211.447.2(1)(b) in that appellant had left the child without provision for support and without making arrangements to visit or communicate with the child. After a hearing, the court entered judgment on March 28, 1986, terminating appellant's parental rights on the asserted ground of abandonment, and those of Nicole on the ground of her own renunciation. This appeal, prosecuted only by the father, M.J.F., followed.

■ In a case for termination of parental rights based on abandonment under § 211.-447.2(1)(b), two conditions must be shown. It must appear that the parent, without good cause, (1) "left the child without any provision for parental support" and (2) "without making any arrangements to visit or communicate with the child, although able to do so." It therefore follows, of necessity, that the proof must include evidence showing some ability on the part of the parent to make a monetary contribution toward support of the child not in the parent's custody and accessibility of the child for purposes of visitation or communication. Appellant contends none of these conditions were met by the evidence in this case.

■ The termination of parental rights is an exercise of awesome power and strict and literal compliance with the statutory language is demanded. The party seeking to invoke the statute must carry the full burden of proof. *In the Interest of W.F.J.*, 648 S.W.2d 210, 214 (Mo.App.1983). The

1. All statutory references are to RSMo.Supp. 1985 except as otherwise noted.

2. Before 1985, § 453.040(4), RSMo.Cum.Supp. 1984, and prior enactments of the same section provided that parental consent in adoption cases was not required upon proof of abandonment or neglect of the child by the parent. The terms of that section and of § 211.447.2(1) providing for termination of parental rights under the Juvenile Code were the same, as were the

elements of proof. In 1985, the legislature deleted § 453.040(4) and made consent to adoption unnecessary as to a parent whose rights were terminated pursuant to law. Thus, the revision in the adoption law relegates proposed adoptive parents to proceedings under the Juvenile Code for establishment of abandonment or neglect in place of the previous option of trying those issues in the first instance under a petition for adoption.

respondent must have shown by clear, cogent and convincing evidence that grounds for a finding of abandonment existed. Section 211.447.2; *In the Matter of T.C.M.,* 651 S.W.2d 525, 535 (Mo.App.1983).

With emphasis on the phrases from the statute, "without good cause" and "although able to do so," the following facts, undisputed in this case, are noted. Appellant was unaware that the child had been born to Nicole until July, 1985. He had previously inquired of Nicole's mother to learn where Nicole had gone in November, 1984, but on instruction from Nicole, her mother refused to answer. At the date when appellant did learn about the birth of his daughter and continuously thereafter throughout this proceeding, the child was in the custody of the juvenile officer and in the home of the adoptive parents whose identity and residence location were not revealed. From March, 1985, to and including the date of hearing, appellant was in the custody of the Missouri Department of Corrections, first at the Booneville Correctional Center and later at the Tipton Pre-Release Center. According to an affidavit filed in the case when counsel was appointed to represent appellant, he had no assets and no income. There was no contrary evidence.

■ From these facts, it is apparent that appellant cannot be subjected to a termination of parental rights for acts or omissions prior to July, 1985, because he had no knowledge of where Nicole was during the prenatal period, he was not informed when the child was born, the mother acted to conceal the fact of the child's birth and appellant's identity as the father and there was no evidence suggesting appellant had any means of learning the facts. Appellant had good cause for his failure to provide support and to visit the child because the mother's conduct frustrated any possibility for appellant to learn of his parental obligation.

■ In its findings supporting the declaration of abandonment of the child by appellant, the trial court laid particular stress on appellant's conduct in February, 1985, which resulted in revocation of his probation and his incarceration.[3] It cannot be disputed that appellant's record casts grave doubt upon his suitability as the custodian of a child, particularly of tender years, but the issue here is not custody but termination of parental rights. During the period from March, 1985, through the date of hearing on the termination petition, appellant was in custody and, if for no other reason, his incarceration rendered him incapable of visiting the child, even were the juvenile officer to have disclosed the identity of the adoptive parents. For the same cause, appellant was unable to seek employment to acquire funds with which to contribute to the child's support. Incarceration in and of itself may not be used as a ground upon which to terminate parental rights, § 211.447.3(6).

In sum, the proof adduced by the juvenile officer failed to establish that appellant knew or had the means of knowing that his child had been born or even where the child had been placed, thereby effectively precluding any possibility for appellant to make any contact with the child. The proof also failed to show that appellant had any ability to contribute to the child's support after he was made aware of the birth, assuming also that the confidential nature of the adoption proceeding would have been compatible with support provided by the natural parent.

The root question in this case is whether the juvenile officer presented sufficient evidence from which it could be concluded that appellant, during the period preceding the filing of the petition for termination,[4] had a settled purpose to abandon the child.

---

**3.** At the age of 17, appellant was convicted of burglary and stealing and he was placed on probation. In February, 1985, he traveled to the East coast which was a violation of the terms of probation. In consequence, he was returned to Booneville and was anticipating release after the date when this case was heard.

**4.** Because of the unique fact situation in this case, the applicable period for proof of facts justifying termination begins in July, 1985 and ends with the filing of the second amended petition, February 10, 1986.

As demonstrated above, appellant's conduct prior to July, 1985 is not probative on the subject because he had neither the knowledge of the child's existence nor the means to acquire that knowledge. After he was made aware that Nicole had given birth, the child had already been placed in the custody of the juvenile officer. This raises the question of whether conditions on which the court relied for jurisdiction are applicable to the judgment terminating appellant's parental rights because the law is well settled that as a prerequisite for a judgment of termination, it is essential the evidence establish the conditions which induced the court to originally take jurisdiction. *In Interest of D.R.W.*, 663 S.W.2d 426, 428 (Mo.App.1983). In this regard, it is again necessary to note that jurisdiction to acquire custody and jurisdiction to terminate parental rights are not coexistent or coextensive.

■ Intention to abandon a child has been variously defined. It is the willful giving up of a child with the intention that the severance be of a permanent nature. *In Re M.J.M.*, 483 S.W.2d 795, 797 (Mo.App. 1972). It is the voluntary and intentional relinquishment of custody of the child with the intent to never again claim the rights or duties of a parent. *In Re Trapp*, 528 S.W.2d 489, 495 (Mo.App.1975). Abandonment implies a willful positive act such as deserting the child. *T.H. v. Ambelang*, 497 S.W.2d 210, 211 (Mo.App.1973).

■ Child abandonment is generally not compatible with a case where custody of the child has been taken from the parent involuntarily. *In Interest of W.F.J.*, *supra* at 215. This is so because the enforced separation of parent and child and placement of the child in a foster home operates to accomplish some estrangement and, without intervention by the juvenile officer to effect reconciliation, operates to create the very circumstances which destroy the parent-child relation. The separation itself and placement of the child in a foster home therefore constitute no proof of abandonment in the face of resistance by the parent to the termination proceeding. *In Interest of W.F.J.*, *supra* at 215.

■ Measured by the above precepts, it cannot be said that the evidence in this case showed any intent at all on the part of appellant to abandon his daughter. When he was first notified that the child had been born, he refused to relinquish his parental rights. He sought appointment of counsel to represent him in the termination action, he appeared and testified and resisted the efforts of the juvenile officer to deprive him of his parental status. When the judgment was entered against him, he prosecuted this appeal.

It is, of course, true that during the relevant time period, appellant was incapable of taking the custody of and responsibility for the care of his daughter, but custody was not withheld from him by the juvenile officer on that account. There was never any recognition of even an ultimate prospect to reconcile father and daughter, only a studied purpose to consummate the adoption which Nicole had arranged without appellant's knowledge or participation. The respondent did not prove by clear, cogent and convincing evidence that appellant abandoned the child and the judgment must therefore be reversed.

■ Reversal of the judgment terminating appellant's parental rights does not end the responsibility of the juvenile officer in this case. The act of Nicole in surrendering her rights and in giving physical custody of the child to the juvenile officer was sufficient to invest the court with jurisdiction over the child, which jurisdiction continues irrespective of reversal of the judgment of termination as to appellant. The future welfare of the child remains the legitimate concern and responsibility of the juvenile officer. Appropriate steps should therefore be taken by the court, on application by the juvenile officer, to direct disposition and treatment of the child in accordance with the provisions of § 211.181.

The judgment terminating the parental rights of appellant, M.J.F., to the baby girl born June 19, 1985 is reversed. The judgment is otherwise affirmed and the case is

remanded for further proceedings consistent with this opinion.

All concur.