**In the Interest of C.R., a Minor.**

**JUVENILE OFFICER, Respondent,**

v.

**C.F., Natural Father, Appellant.**

**No. WD 40345.**

Missouri Court of Appeals,
Western District.

Oct. 11, 1988.

Rebbecca Lake Overman, Independence, for appellant.

Anne E. Rauch, Kansas City, for respondent.

Before KENNEDY, C.J., and BERREY and FENNER, JJ.

PER CURIAM.

The juvenile officer initiated proceedings to terminate the parental rights to C.R., a female child born out of wedlock on January 10, 1983. After a bifurcated hearing, the juvenile court terminated the parental rights of B.R., the child's mother, on the ground of failure to rectify; E.B., the child's legal father, on the ground of abandonment; and C.F., the child's biological father, also on the ground of abandonment.

Only C.F. appeals. Appellant now contends that the order terminating his parental rights pursuant to section 211.447.-2(1)(b) RSMo 1986, was not based on clear, cogent, and convincing evidence.

The order is affirmed.

The Division of Family Services (DFS) assumed custody of C.R. when she was five months old. B.R., the child's mother and sole custodian, had been arrested and incarcerated without making adequate arrangements for C.R. and her siblings. Since June 20, 1983, the child has continuously remained in foster care.

On June 22, 1983, the DFS had contact with appellant's mother. She was aware that C.R. was in the custody of the DFS and requested a visit for herself and appellant for the following week. Neither appellant nor his mother appeared for the scheduled meeting and neither person ever contacted the DFS again.

From the time of the missed meeting to the filing of the petition for termination of parental rights on September 16, 1986, appellant's whereabouts were unknown. The child's mother had no information on how to contact appellant. In an effort to locate appellant, the DFS had begun sending inquiries to state agencies and utility companies in 1985. In January of 1987, the DFS learned that appellant was incarcerated in Oklahoma. After service of the petition, appellant returned a signed form requesting appointment of counsel.

Appointed counsel filed an answer and represented appellant at the hearing on September 14, 1987, but presented no evidence on his behalf. Appellant did not attend the hearing. Evidence adduced at the hearing indicated that appellant had no contact with C.R. since her placement in foster care in 1983. Social workers for the DFS testified that appellant had never visited the child; telephoned her; provided her with any financial support; inquired about her; and had never sent her any letters, cards or gifts. A psychologist working with C.R. had no knowledge of any involvement by appellant during the child's life. Even after receiving notice of the termination proceedings, appellant made no effort to communicate with the child or to contact the DFS to inquire about the child.

In terminating appellant's parental rights on the ground of abandonment, the juvenile court found that appellant had no contact whatsoever with the child and had not supported her for a period exceeding six months. The court further found that the child had no emotional ties to appellant,

whom she had not seen, if ever, since prior to July, 1983.

■ Termination of parental rights on the ground of abandonment requires that, for six months or longer, "[t]he parent has without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so." Section 211.447.2(1)(b) RSMo 1986. The petitioning party, the juvenile officer herein, bears the burden of proving the strict and literal terms of the statute by clear, cogent, and convincing evidence. *In Interest of B.C.H.*, 718 S.W.2d 158, 160 (Mo.App.1986). That burden is met when the evidence instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true. *Id.*

Appellant contends that the juvenile officer presented no evidence showing his ability to either contribute to his child's support or to visit or communicate with his child. Faulting the DFS, appellant maintains that no evidence established that he personally knew where C.R. was and how to communicate with her. Appellant reminds this court that his imprisonment alone does not constitute grounds for abandonment.

Appellant relies principally upon *In Interest of Baby Girl W.*, 728 S.W.2d 545, 547 (Mo.App.1987), which states that termination of parental rights on the ground of abandonment requires "evidence showing some ability on the part of the parent to make a monetary contribution toward support of the child not in the parent's custody and accessibility of the child for purposes of visitation or communication."

Inapposite to the instant matter, *Baby Girl W.* presents a "unique fact situation." *Id.* at 548 n. 4. That case concerns a mother who concealed from the natural father the fact of his child's birth. *Id.* at 547. Baby Girl W.'s father made unavailing efforts to locate the mother during the prenatal period, but did not learn of the child's birth until after his imprisonment, which continued throughout the termination proceedings. *Id.* at 547–548. When first notified of the child's birth, the father actively opposed termination of his parental rights. *Id.* at 549. The father testified at the termination hearing. *Id.* According to an affidavit presented in the case the father had no assets or income. *Id.* at 548. The juvenile officer presented no contrary evidence showing the father's ability to contribute to the child's support. *Id.* In terminating the father's parental rights, the juvenile court laid particular stress on his incarceration. *Id.* This court reversed the order of termination finding that the father had good cause for his failure to provide support and visit the child because the mother's conduct frustrated any possibility for the father to learn of his parental obligation. *Id.* The Baby Girl W. case turned on the mother's concealment of the child's birth, which left the father without the means to discover the child's existence. The import of *Baby Girl W.* should not be extended beyond its unusual circumstances.

■ In the present case, appellant does not allege that there was any concealment from him of C.R.'s birth. The evidence indicates that appellant had the means to discover his parental obligation. His own mother was aware of the child's location; the DFS arranged for a visit. Appellant's only participation in the termination proceedings was to return a signed form requesting free counsel. Other than listing appellant's address at a correctional facility in Oklahoma, the order terminating his parental rights made no reference to appellant's incarceration.

The uncontroverted evidence establishes that, for a period of three years before the filing of the petition, appellant was totally absent from his child's life, never establishing any emotional bonds with her. The DFS made the child available for communication and made repeated attempts to locate appellant. Yet, in spite of available resources, appellant made no effort to inquire about his child, even after service of the termination petition. Such lack of interest demonstrated appellant's intent to forego all parental duties and relinquish all parental claims.

Under section 211.447.2(1)(b), abandonment occurs when, for six months or longer, "[t]he parent has without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so." The literal wording and grammatical structure of the statute suggest that the clause "although able to do so," qualifies the phrase, "without making arrangements to visit or communicate with the child," but not the phrase, "without provision for any parental support." The parent's ability "to do so" logically connotes ability to carry out some action. The only specified action is "making arrangements to visit or communicate." To construe section 211.447.2(1)(b), as requiring the juvenile officer to prove a totally absent parent's ability to provide support is illogical when the parent's whereabouts remain unknown well beyond the statutory period. Although termination statutes are to be strictly construed and the petitioning party bears the burden of proof throughout the proceedings, the law favors the construction of statutes which is in harmony with reason and common sense and which tends to avoid unreasonable and absurd results. *B.C.H.*, 718 S.W.2d at 162. The juvenile officer is not required in the first instance to negate every possible excuse or reason for a parent's failure to support and to maintain contact with his child. *Id.*

In the present case, appellant attempted no justification of his total abdication of parental responsibilities and failed to place his alleged lack of financial ability in issue. Appellant's inaction compares unfavorably with the action of the father in *Baby Girl W., supra,* 728 S.W.2d at 548–549, who actively participated in the termination proceedings, testified at the hearing, and injected his continuous incarceration coupled with an inability to earn income.

In a case, such as this, where the parent makes no effort to offer any explanation of his failure to support or maintain contact, the juvenile officer need not negate every possible excuse. The juvenile officer's evidence in the first instance established that appellant left his child without any provision for support, and without making any contact with her, although he had the means to locate her and the DFS made the child available for communication.

Clear, cogent, and convincing evidence supported the termination of appellant's parental rights on the ground of abandonment. The order is affirmed.