In the Interest of J.L.C.

JUVENILE OFFICER, Plaintiff–Respondent,

v.

D.K.R. (Natural Mother), Defendant–Appellant.

No. WD 41108.

Missouri Court of Appeals, Western District.

June 13, 1989.

Nicholas L. DiVita, Shook, Hardy & Bacon, Kansas City, for defendant-appellant.

Anne E. Rauch, Dale Godfrey, Guardian Ad Litem, Kansas City, for plaintiff-respondent.

Before TURNAGE, P.J., and CLARK and FENNER, JJ.

TURNAGE, Presiding Judge.

D.K.R., the mother of J.L.C., appeals an order terminating her parental rights to such child. She contends that the evidence failed to show that she was able to support such child, and therefore, the finding of abandonment was not justified. Affirmed.

J.L.C. is a three-year old male. Following a call to the Division of Family Services Hot Line when the child was about four months old, an abuse/neglect investigation found reason to suspect physical abuse of the child by the mother's boyfriend. When the child was approximately ten months old a second hot line call was received by DFS, and it was determined there was reason to suspect a lack of supervision as well as physical abuse. A month later a third hot line call was received after the child was beaten by his mother's boyfriend.

Two days after the third hot line call the child was hospitalized for failure to thrive (malnutrition). The child displayed behavioral eating problems such as refusing food and throwing temper tantrums when fed by the mother.

The child was discharged to his mother from the hospital and by the end of a month in his mother's care, the child had gained only four ounces. This was only one-half the minimum weight gain expected for the child.

When the child was returned to the mother after his hospital stay, DFS provided visiting nurse service, day care, a social service worker to visit the home on a regular basis, and follow up appointments at the hospital. Despite these services availability, the mother failed to take advantage of them.

When the child was about fourteen months old a neglect petition was filed with the juvenile court which alleged that the child had been hospitalized because of inadequate weight gain. This problem was subsequently determined to be nonorganic as it was caused by the mother's inability and refusal to provide adequate nutrition for the child. At the hearing on the petition the mother admitted the allegations, and the court assumed jurisdiction of the child thereafter placing him in the care of DFS. The court ordered parenting training as well as individual counseling referrals for the mother.

After the child was placed in the custody of DFS for foster care, a number of DFS case workers attempted to work with the mother. Their testimony revealed a consistent pattern of missed appointments for scheduled counseling and parenting skills classes. In addition, the mother never attended any medical appointments for the child, and was consistently moving about. At one point she left Kansas City and moved to Marshall.

When the mother returned from Marshall to Kansas City in August, 1986, she entered into a written service agreement which identified the problems needing correction before she could be reunited with her child.

After a history of missed appointments for parenting skills and individual counseling, the mother entered into a second written service agreement in December, 1986. Thereafter, the mother did attend a screening session at Children's Place and the recommendation was made that the mother attend parenting classes, and that the child be placed in a stable and nourishing home.

Efforts were made to assist the mother in applying for public financial assistance, but there is no evidence that she ever applied.

From September, 1986, to January, 1987, the mother visited the child about twice a month despite the fact that visits were offered on a weekly basis. Case workers continued to note that the mother failed to maintain a stable residence, failed to attend parenting classes, and failed to attend any medical appointments.

A DFS social worker met with the mother in March, 1987, and encouraged her to maintain weekly visits with the child. In spite of many efforts to make further personal contact with the mother, including sending numerous letters to her last known address, the case worker was not able to contact her until May, 1987. At that time, he discussed a service agreement which apparently was not completed. In June,

1987, the case worker received a call from the mother. This was the last contact he had with her until he was transferred from the case in September, 1987. The worker testified that to his knowledge the mother had no contact with the child from March to September, 1987, nor did she send any cards, letters, or gifts to him, nor provide any support. Further, the mother did not attend any parenting classes.

The DFS case worker assigned to the case in September, 1987, made repeated efforts to contact the mother between September, 1987, and April 27, 1988, without success. The worker testified that the mother had no contact with her son during that period of time.

The petition for termination of parental rights was filed in March, 1988. At the hearing, the mother testified that she had been living with the same man from July, 1986, until the hearing in August, 1988. She stated that they had gone to Georgia in August, 1987, and returned to Kansas City in April, 1988. She admitted that during this time period she had no contact with the child or DFS.

The court entered findings of fact and conclusions of law in which it found that the termination of the mother's parental rights was in the best interest of the child; the court found by clear, cogent and convincing evidence that the mother had abandoned the child for a period of six months.

Section 211.447.2(1)(b), RSMo 1986, authorizes termination of parental rights if it appears by clear, cogent and convincing evidence that a parent has abandoned a child for six months or longer, providing the child is over one year of age. Abandonment may be shown by proof that the parent, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so. On this appeal, the mother contends that the proof does not show she was able to support the child and, therefore, the proof is insufficient to prove abandonment.

The evidence recounted above shows a consistent pattern of indifference and neglect by the mother toward the child. The evidence further shows that from August, 1987, to April, 1988, DFS had no idea where the mother was, and despite repeated efforts, was unable to contact her.

The precise argument made by the mother is answered by the case of *In the Interest of C.R.*, 758 S.W.2d 511, 514[4, 5] (Mo. App.1988), when this court stated:

To construe section 211.447.2(1)(b), as requiring the juvenile officer to prove a totally absent parent's ability to provide support is illogical when the parent's whereabouts remain unknown well beyond the statutory period.

This case fits squarely within the holding. No one knew the whereabouts of the mother during a period exceeding the six-month statutory time required for abandonment. In that circumstance, it was not necessary for the juvenile officer to prove that the mother had the ability to support the child during that time.

Another ground for termination was alleged and found to exist by the court, but it is unnecessary to discuss that ground or the attack made upon it by the mother because the finding of abandonment is sufficient to justify termination. Section 211.-447.2.

The judgment is affirmed.

All concur