980 S.W.2d 608 (1998)
In the Interest of T.H., J.H. and B.H.
David W. KIERST, Jr., Juv. Officer, Respondent,
v.
T.H. (Natural Father) and T.L.H. (Natural Mother), Appellants.
Nos. WD 54281, WD 54282.
Missouri Court of Appeals, Western District.
December 15, 1998.
*609 Robert Schieber, Kansas City, MO, Attorney for Respondent.
Samule Patrick Baggette, II, Independence, MO, Attorney for Appellant T.H. (Natural Father).
David Swartzbaugh, Kansas City, MO, Attorney for Appellant T.L.H. (Natural Mother).
Before: Presiding Judge RIEDERER, Judge LOWENSTEIN and Judge LAURA DENVIR STITH.
LOWENSTEIN, Judge.
This is a termination of the parental rights of T.H. (Mother) and T.L.H., Sr. (Father) to their three children; T.H. (a boy born September 26, 1990), J.H. (a female born July 7, 1989), and B.H. (a female born August 11, 1983). All three children came under the custody of the Juvenile Court in late 1993 after Father broke J.H.'s leg (the femur) when he spanked her with a stick. The children were placed in alternative care in November 1993. The Juvenile Officer's amended petition for termination filed in September 1996 alleged, and the court found, that the children were without proper care, custody and support since November 21, 1993, the date of the injury. The children were committed to the custody of the Division of Family Services (DFS) on March 21, 1994, where they have remained ever since.
Father pleaded guilty to felony child abuse of his then four-year-old daughter and in January 1995 received five years probation, one of the terms of which was that he was not to have reunification with his children *610 during the period of probation. In October 1996, Father, without success, sought to modify the probation agreement which is scheduled to end in February 2000. The motion to terminate both parents' rights alleged the three children had been under the jurisdiction of the Family Court for over a year, and the potentially harmful conditions that previously existed continue to exist with little likelihood those conditions will be remedied at an early date. The petition further alleged Mother has not demonstrated the ability to protect the children from further abuse nor meet the children's needs, despite extensive counseling services rendered to her. It alleged Father has not made progress in accepting responsibility for the injuries to the one child and has shown no ability to protect the children nor meet their emotional or educational needs. The Juvenile Officer asserted the children had few, if any, emotional ties to the parents because of lack of visitation or contact, and neither parent had contributed to the cost of care of the children, and any additional services to the parents could not bring about the necessary adjustment justifying a return of the children.
The evidence from the March 1997 trial favorable to the result, showed J.H.'s broken leg in 1993 caused her to be in traction for three weeks, and in a full body cast for three months. When three-year-old T.H. was taken from the home, he was developmentally delayed (speech, motor skills, socialization) by some two and a half years. B.H. was four months old in November 1993, when the children left the home. The evidence showed that both parents attended numerous parenting skills classes, individual therapy, anger control, and marital counseling during the ensuing years after the children were taken from them. In October 1995, the family went into family therapy, and in July of 1996, the court ordered "Family Reunification" services, with both parents having limited visitation. Father and Mother resided together, so for several years, her visits with the children, due to the probation agreement, were out of the Father's presence. Although contrary to the probation agreement, D.F.S. allowed Father visitation and contact with the children until some time in 1996.
Lori Payne has been the parents' social worker since April, 1994. She testified as to the many programs and treatment plans afforded the Mother and Father. She found that no progress had been made in their parenting skills. She felt the Father's legal inability to see the children until the year 2000, coupled with her observation that Mother was unable to parent the children by herself, dictated a termination of rights of both parents. Payne felt both parents should have gained more from the two parenting skills classes that "would have enhanced their skills and judgment." Although the Mother had improved her parenting skills, Payne opined Mother could not, alone, handle safety and parenting concerns. She felt Mother would become involved with video games and not enforce rules.
Dr. Mary Matzeder, a psychologist, was called by the Mother. The witness was the children's therapist from October 1995 to July 1996. Matzeder said both parents, particularly Father, showed improved parenting skills, but Mother could not parent the children by herself because her "skills are low." Matzeder said Mother showed no inclination to separate from Father. The Court asked her, "In your professional opinion, do you believe it's in the best interests of these children tothe term has been, to be in limbo, for a period of three and a half years with only the possibility and no certainty that reunification can occur at the end of that period?" She answered, "I'd have to say no."
Dr. Joyce Banta, was the children's current therapist. She testified the children don't pay attention to the Mother's attempts at discipline. She noticed the Mother spent an inordinate amount of time with J.H., to the exclusion of the two younger children. J.H., and her younger brother, T.H. had developed behavior problems. T.H. was still delayed in his educational and emotional development. The youngest child, B.H., had bonded with her foster parents, having been out of Mother and Father's home since age four months. Banta's opinion, like Payne and Matzeder, was that it would not be in the children's best interest to wait until the Father's probation expired to attempt reunification. *611 She said the children had gone through too much upheaval and they needed a stable home.
The Mother and Father emphasize the following evidence that would point to a different result. Even though the scope of review provides a review of the evidence supporting the judgment, the court is not unmindful of the efforts of Mother and Father to improve and sustain their parental rights. In fact, the trial judge acknowledged the continued efforts of the parents as compared to the need to stabilize the lives of the children. The testimony and evidence showed the mother regularly visited the children once a week, and both parents took and completed the many classes and worked toward family unification. The house was clean, and the parents were cooperative. The state planned to file for termination in August 1995, but that approach was dropped due to the parent's progress.
Pursuant to § 211.447.2(2), RSMo 1994, the juvenile court found termination was in the best interest of the children, and by clear, cogent and convincing evidence it determined the children had been abused. The judgment found that under (c) there was a severe act of physical abuse toward J.H. under circumstances that indicates the parent knew or should have known that such act was committed in that J.H. sustained a fracture of the femur through abusive acts of the father while the mother was in the home.
The court found under § 211.447.2(3) the children had been under the jurisdiction of the court for over a year and the harmful conditions remained with little likelihood of being remedied at an early date, and continuation of the parent-child relationship would greatly diminish prospects for the children's integration into a stable and permanent home. Specifically, the court cited the lack of hope for any reunification before the year 2000, and even then reunification might not be successful due to the passage of time of no contact. Further, the court found the Mother had not rectified the circumstances which would allow placement with only her. The judgment recited that Mother's participation in the therapy and skills courses had not raised her parenting skills to the level of being in her care alone. The court made the following findings under the following subdivisions: (a) the parents had substantially complied with the terms of the agreements; (b) the efforts of the Division of Family Services to aid the family had failed; (c) no substantial evidence of a parental mental condition; and, (d) no evidence of chemical addiction.
The court was then required to make findings under § 211.447.3 and found the children had some emotional ties to the parents, additional services would not bring about a lasting parental adjustment within an ascertainable period of time, and there had been a deliberate act which the parents knew or should have known would put the children at a substantial risk of harm.
The court further found the children had bonded with the foster parents who had expressed a desire to adopt the children, and entered a judgment terminating both parents.

SCOPE OF REVIEW
The decision terminating parental rights will be affirmed if the record contains substantial evidence and reasonable inferences supporting the decision, it is not against the weight of the evidence and there has been a proper declaration and application of law. In Interest of W.S.M., 845 S.W.2d 147, 150 (Mo.App.1993). Caution will be exercised in setting aside the judgment based on the judgment being against the weight of the evidence, and an appellate court should only set such a judgment aside if there is a firm belief the judgment is wrong. Id. An order of termination must be supported by clear, cogent and convincing evidence that at least one of the grounds set out in § 211.447, RSMo 1994 exists, and the termination is in the child's best interests. Id. This court will defer to the trial court on issues of witness credibility and choosing between conflicting evidence, and will review the facts and their reasonable inferences in the light most favorable to the trial court's order. T.S. v. P.S., 797 S.W.2d 837, 840 (Mo.App.1990).

*612 MOTHER'S APPEAL
In her first point, Mother contests the termination on grounds proven by clear, cogent, and convincing evidence, that she knew or should have known of the one severe act of violence toward the one child by the act of the Father. Section 211.447.2(2)(c), paraphrased and pertinent here, refers to a severe act of physical abuse toward any child in the family by "another under circumstances that indicate that the parent knew or should have known that the acts were being committed toward the child or any child in the family." The injury was inflicted on J.H. after she took a piece of candy from the refrigerator. Mother told Father who took the girl into the next room for a spanking. He hit her with a stick. She cried for ten minutes. Mother then went into the room and saw the child curled into the fetal position. An ambulance was called. Police came to the scene and both Mother and Father told officers, and then told caseworkers, the child had fallen down some steps. After the child told hospital workers her father hit her with a stick, the parents told the true story. Mother relies on In Interest of M.H., 859 S.W.2d 888, 89495 (Mo.App.1993), where the appellate court held there was insufficient evidence to terminate the father where he was either in another room or out looking for a job when the two acts (going underwater while taking a bath with the mother or being severely shaken) occurred. Mother also relies on In Interest of T.S., 925 S.W.2d 486, 48889 (Mo.App.1996) where the father was taking a shower and the mother shook the child's head into a couch causing severe head injuries. The court noted there was no clear or convincing evidence the father knew of any tendency of the mother to be irrational. The two cases just cited would support the Mother, but for the fact that she twice lied about the incident, and only told the truth after the child gave a true account to authorities. Even though the Father had no previous history of displaying severe physical abuse toward the children, this court rules the facts here satisfy the statutory requirement of § 211.447.2(2)(c) to terminate parental rights as to Mother.
In her second point relied on, Mother contends there was insufficient evidence to support the trial court's decision under § 211.447.2(3) which in pertinent part reads: "... the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home." She does not contest the other statutory requirement under this section, that the children had been under the jurisdiction of the court for over a year.[1]
Mother's point boils down to an argument that the trial judge based the termination on the act of severe abuse by the Father, and Mother had failed to change or remove the harmful circumstances, and the court failed to take into account that she "did everything asked of her by DFS," that she had improved on her skills, was keeping a clean home, and that the children still had emotional ties to her. She expands this argument by showing neither she nor Father had been in trouble with the law since November 1993, nor had there been any evidence of abuse or neglect on her part. She tells this court it is unfair to her to be terminated because of the father's act and that reunification cannot be attained because of his probation agreement.
What the Mother has seized upon is the candor of all the witnesses and the quandary expressed by the trial judge. The evidence did indeed show the Mother had tried to rectify the conditions. There was sufficient evidence under the standard of review *613 that there were no further programs or plans, § 211.447.2.(3)(a) and (b), which would aid Mother beyond her present level. No witness, however, would say the mother alone could handle any or all the children. They had been out of her home since late November 1993. Father, would at the very best, be allowed contact in January of 2000. The two oldest children had developed substantial behavioral problems, and the youngest had been out of the home since infancy. All the children were on the verge of being permanently placed. The trial court's judgment here was correct in stating the termination of rights of Mother was in the children's best interests. It was not bound to believe or accept evidence that Mother had become a better person, and as such had rectified the conditions which led to custody being given to DFS. K.S. v. M.N.W., 713 S.W.2d 858, 865 (Mo.App.1986). The court was allowed to make that decision based on the nature and extent of the past abuse, the length of time parent and child had been separated and based on placement options. Id. As the Court said in In Interest of M.E.W., 729 S.W.2d 194, 197, (Mo. banc 1987), the evidence here showed the Mother was not now, nor would she ever be, expected to provide the needs of the children who had been out of the home for a long period of time, and the children's needs called for a stable environment. This point is denied.

FATHER'S APPEAL
In his first point, Father says there was insufficient evidence to show it was in the children's best interest to terminate his rights. He does not contest the issue of his severe abuse toward the sibling's older sister. He does contest the proof in the record of his act being "deliberate." Section 211.447.3(7) states: "Deliberate acts of the parent ... which the parent knew or should have known that subjects the child to a substantial risk of physical ... harm." The argument borders on the absurd. Without repeating all the facts and inferences from the record, it is clear this man broke the strongest bone in the human body of a four year old girl, punishing her for taking candy. He and his wife lied about this event. The little girl spent an inordinate amount of time in traction and a body cast, and has had little or no contact with him since 1993, and no chance of contact with him until after January, 2000. He also claims error when the trial court wrote that further programs and services would not be likely under these circumstances to bring about a return within a reasonable time. Both these assertions have utterly no merit and are denied.
His second point presents the argument that the juvenile judge relied too heavily on the fact that reunification would not take place before 2000, which he describes as a "temporary" arrangement. His point fails to address that he has been out of his children's lives since November 1993, and that the children would have to wait almost another year and a half for him to become available, due to his severe act of criminal abuse, and his subsequent decision to stay away from his children for five years in order to escape the penitentiary. This point is denied.
The final point asserts his termination is in reality due only to his probationary status, which he equates to being incarcerated. He quotes law from In Interest of Baby Girl W, 728 S.W.2d 545, 548 (Mo.App. 1987) that incarceration alone is not sufficient in and of itself to support termination. The Baby Girl W case involved a termination based on abandonment, where this court held that an involuntary or enforced separation does not constitute proof of abandonment. Id. In the case at bar, Father, by his own agreement, has chosen to escape prison by agreeing to the separation. Further, even if there had not been such a prolonged absence from his children's lives, the evidence here supported the trial court finding that he could gain nothing more from the passage of time or from programs and services.
The court recognizes the exercise of terminating parental rights is an exercise of an awesome power and should not be done lightly. In Interest of W.F.J., 648 S.W.2d 210, 214 (Mo.App.1983), but now rules the judgments of termination of the three children *614 from Mother and Father are in all respects affirmed.
All Concur.
NOTES
[1] In the Argument portion of her brief, Mother makes a different attack upon the judgment, by asserting the judgment itself did not relate sufficient facts to support the conclusion, and she sought to have this court send the matter back on that account. This matter was not properly enunciated in the Point Relied On, so under Rule 84.04(d), are not to be argued elsewhere in the brief, Jones v. Eagan, 715 S.W.2d 596 (Mo.App. 1986), and "... the issue will be deemed abandoned by the appellate court." Livingston Manor v. Department of Social Services, 809 S.W.2d 153, 157 (Mo.App. 1991); In Interest of W.S.M., 845 S.W.2d 147, 149 ftnte 1 (Mo.App.1993).