In re the Interest of S.L.J. and E.M.J.

State of Missouri, Greene County Juvenile Office, Petitioner–Respondent,

v.

Donald A. Cook, Jr., Respondent–Appellant.

No. 22833.

Missouri Court of Appeals, Southern District, Division One

Oct. 28, 1999.

Christopher A. Hazelrigg, Hazelrigg & Roberts, P.C., Springfield, for Appellant.

Bill Prince, Springfield, for Respondent.

KENNETH W. SHRUM, Judge.

Donald A. Cook, Jr., (Father) appeals

from a judgment of the juvenile court[1] terminating his parental rights to his alleged biological daughter, S.L.J., under § 211.447, RSMo Cum.Supp.1997. Father contends the juvenile court erred in ruling to terminate his parental rights because the juvenile officer failed to prove the bases for termination by clear, cogent, and convincing evidence. We affirm the judgment.[2]

## FACTS

Father is currently serving a fifteen-year sentence in the custody of the Missouri Department of Corrections for second-degree murder. By Father's estimation, S.L.J. was conceived approximately one and one-half months before his arrest and incarceration in October 1990. Around the time of S.L.J.'s conception, Father was living with S.L.J.'s biological mother (Mother). Father testified that at the time he was incarcerated, Mother was not "showing," that Mother had not told him she was pregnant, and that he did not otherwise know she was pregnant. S.L.J. was born March 25, 1991. In 1993, the Missouri Department of Social Services, Division of Child Support Enforcement, filed a paternity action against Father. Father testified that this was the first he knew of S.L.J., who was then "a little over two years old." Upon learning of S.L.J., Father contacted Mother via telephone. Father testified that during this phone call, "I got to speak with [S.L.J.]—I mean, as much as you can speak with someone that age." He further testified that, as of the time of the hearing, this was the only time he had spoken with S.L.J. on the phone and that he had never met S.L.J. in person.

Approximately one month after this contact, on or about July 8, 1993, the juvenile court assumed jurisdiction of S.L.J. and placed her in the custody of Greene County Division of Family Services (DFS). Father testified that, as a result, he did not have any contact with S.L.J. for two years following his first and only phone conversation with her. He explained, "[N]o one informed me where [S.L.J.] was at. I—It took me that long to find out where [she] was at." Father did learn from S.L.J.'s great uncle that S.L.J. was in the custody of DFS, though he still did not know *where* she was. When asked what efforts he made to reestablish contact with S.L.J., Father responded, "The only thing I could do. I was steadily writing letters to different agencies in the state."

In 1995, Father learned that S.L.J. was in the custody of Greene County DFS. At that point, he made contact with S.L.J.'s DFS caseworker, D.J. Patrick Cary (Cary). At the hearing in this case, Cary testified that during the time she handled S.L.J.'s case, Father "sent cards and letters to [S.L.J.]" but did not have any other contact with S.L.J., and S.L.J. did not "return[ ] any correspondence or communicate[ ] with [Father]." Cary further testified that, to her knowledge, S.L.J. had no emotional connection to Father and that Father did not "provide any ... kind of money or gifts or anything of that nature." In September 1996, Cary resigned her position with DFS and S.L.J.'s case was temporarily transferred to another caseworker. Then, in March 1997, DFS caseworker Stephen Rule (Rule) took over S.L.J.'s case and continued to work with S.L.J. up to the time of the hearing in this case. Rule testified at the hearing that Father sent S.L.J. cards and letters on "[b]irth-

---

1. As used in this opinion, "juvenile court" refers to the Family Court Division of the Circuit Court of Greene County. § 487.010, RSMo Cum.Supp.1995; § 487.080, RSMo 1994; § 487.160, RSMo 1994. *See* § 211.021(3), RSMo 1994.

2. The juvenile court's judgment also terminated the parental rights of S.L.J.'s biological

mother to both S.L.J. and S.L.J.'s half-sister, E.M.J. The judgment further terminated the parental rights of E.M.J.'s alleged biological father. These determinations are not at issue in this appeal. Consequently, this opinion is confined to the law and evidence pertinent to Father's claim of error.

days and holidays" and that, to his knowledge, Father had not provided "any kind of financial assistance, even in a limited form," or "any kind of clothing or toys or gifts for [S.L.J.]" When asked whether he believed S.L.J. had "any kind of emotional ties or bonding to" Father, Rule answered, "She doesn't know him." Rule also testified that during the time he had been working with S.L.J., she had not talked or asked about Father. Finally, Rule testified that even if Father were not presently incarcerated, "there's no likelihood ... that [S.L.J.] could be returned to [Father] ... in the foreseeable future," and that "continuing the parent/child relationship between [S.L.J.] and [Father] ... would jeopardize this child's ability to become a part of a stable and permanent home."

Father's testimony corroborated Cary's and Rule's in most respects regarding his financial support and contacts with S.L.J. Father admitted that he had not paid any support for S.L.J., although he earned $7.50 per month "most of the time." Father was unable to estimate the frequency of his cards and letters to S.L.J., though he testified that he sent them for "[b]irthdays, holidays, and other times other than just birthdays and holidays." He later stated, "[N]o, it wasn't consistent. It was that I was doing it and that I wasn't trying to let too much—too much time lapse in between doing it."

Following the hearing, the juvenile court issued its judgment terminating Father's parental rights to S.L.J. The juvenile court based the termination on three grounds: abandonment, § 211.447.2(1); abuse or neglect, § 211.447.2(2); and the existence of juvenile court jurisdiction over the child for one year coupled with findings that "conditions which led to the [juvenile court's] assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future," and that "the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home," § 211.447.2(3). Specifically, the juvenile court found that § 211.447.2(1)(b), (2)(d), (3)(a), and (3)(b) were applicable to the instant case. Father appeals.

We recount additional facts where relevant to our consideration of Father's point on appeal.

## APPLICABLE STATUTORY PROVISIONS

■ The juvenile officer filed the petition in this case on February 9, 1998. On July 1, 1998, § 211.447, RSMo Cum.Supp. 1998 took effect. The juvenile court heard the case on August 12, 1998, and issued its judgment on January 12, 1999. The juvenile court made its findings of fact and conclusions of law in accordance with § 211.447, RSMo Cum.Supp.1997. This sequence of events requires us to determine which version of § 211.447 governs this case, i.e., the version in effect at the time of the filing of the petition or the version that became effective while the case was pending. Both parties cite to the 1998 amendment in their briefs but neither expressly addresses the issue of which law should apply. We conclude that the juvenile court correctly applied § 211.447, RSMo Cum.Supp.1997.

■ Article I, Section 13, of the Missouri Constitution provides that "no ex post facto law, nor law ... retrospective in its operation can be enacted." As a result, we presume that statutes operate prospectively only. *Jones v. Missouri Dep't of Soc. Serv.*, 966 S.W.2d 324, 327[1] (Mo. App.1998) (citing *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993)). However, our courts have long recognized two exceptions to this general rule: "(1) where the legislature manifests a clear intent that the statute act retroactively, and, (2) where the statute is solely procedural or remedial and does not affect the substantive rights of the parties." *Jones*, 966 S.W.2d at 327[1]. Here,

the legislature did not clearly express an intent that the amended version of § 211.447 should be applied retroactively. Thus, we must decide whether the amendment affected the parties' substantive rights.

> "For purposes of retroactivity analysis, 'substantive law relates to the rights and duties giving rise to the cause of action....' *Wilkes v. Mo. Highway and Transp. Com'n*, 762 S.W.2d 27, 28 (Mo. banc 1988). 'Substantive statutes take away or impair vested rights acquired under existing law, or create a new obligation or impose a new duty.' *Brennecka v. Director of Revenue*, 855 S.W.2d 509, 511 (Mo.App.1993). On the other hand, a statute is procedural or remedial in nature if it 'prescribes a method of enforcing rights or obtaining redress for their invasion....' *Wilkes*, 762 S.W.2d at 28."

*Pierce v. Missouri Dep't of Soc. Serv.*, 969 S.W.2d 814, 822 (Mo.App.1998).

Our examination of the 1998 amendment to § 211.447 leads us to the conclusion that the amendment did alter the substantive law of termination of parental rights. In particular, the 1998 amendment provides new grounds on which the juvenile court can base the decision to terminate parental rights. These new grounds are created by operation of § 211.447.5, RSMo Cum.Supp. 1998 in conjunction with § 211.447.2, RSMo Cum.Supp.1998. In relevant part, § 211.447.5, RSMo Cum.Supp.1998 provides:

> "5. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer ... if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section."

Subsection 2 of this statute, in turn, provides:

> "2. Except as provided for in subsection 3 of this section, a petition to terminate the parental rights of the child's parent or parents shall be filed by the juvenile officer ... when:
>
> "(1) *Information available to the juvenile officer or the division establishes that the child has been in foster care for at least fifteen of the most recent twenty-two months;* or
>
> "(2) A court of competent jurisdiction has determined the child to be an *abandoned infant.* ... The court may find that an infant has been abandoned if...."
>
> . . . .
>
> "(3) A court of competent jurisdiction has determined that the parent has:
>
> "(a) Committed murder of another child of the parent; or
>
> "(b) Committed voluntary manslaughter of another child of the parent; or
>
> "(c) Aided or abetted, attempted, conspired or solicited to commit such a murder or voluntary manslaughter; or
>
> "(d) Committed a felony assault that resulted in serious bodily injury to the child or to another child of the parent."

(Emphasis added.) These provisions, taken together, effectively create new grounds for termination and, consequently, new causes of action. Stated another way, the amended statute allows parents' rights in, to, and over their children to be terminated (i.e., impaired) for reasons that previously would not have supported a petition seeking or judgment granting termination. Therefore, § 211.447, RSMo Cum. Supp.1998 substantively changed the law, and we are precluded from applying the amendment retroactively. Accordingly, the trial court correctly made its findings of fact and conclusions of law under § 211.447, RSMo Cum.Supp.1997, and we conduct our review of Father's point thereunder.[3]

---

**3.** Hereinafter, all references to § 211.447 are to RSMo Cum.Supp.1997 unless otherwise noted.

## DISCUSSION AND DECISION

Father's sole point on appeal provides:

"The Trial Court erred in terminating [Father's] parental rights to [S.L.J.] because the Juvenile Officer failed to prove by clear, cogent and convincing evidence to support the judgment based on (1) [Father's] lack of knowledge of [S.L.J.] being born, (2) the two years it took [Father] to locate [S.L.J.] after she came into protective care, (3) that [Father] was not the underlying reason why [S.L.J] came into protective care, (4) the length of time it took a Treatment Plan to be ordered for [Father], (5) [Father's] interest in gaining custody of [S.L.J.], (6) [Father's] clear intent on not desiring to abandon [S.L.J.], (7) [Father's] inability to provide immediate support and custody for [S.L.J.] based on his incarceration, (8) the substantial compliance with the Court ordered Treatment Plan once it became effective for [Father], and (9) the Juvenile Court's apparent reason to terminate [Father's] parental rights based solely on his incarceration."

The issue presented by Father's point is whether the trial court erred in finding that the juvenile officer proved by clear, cogent, and convincing evidence the existence of one or more statutory grounds for the termination of Father's parental rights in, to, and over S.L.J.

■ We review a juvenile court's decision to terminate parental rights under the standards enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *In re M.M.*, 973 S.W.2d 165, 168[3] (Mo.App. 1998). That is, we "will affirm the juvenile court's judgment unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* In conducting our review, we bear in mind that the juvenile court was in a superior position to judge the credibility of the witnesses and that it was free to believe all, part, or none of the witnesses' testimony. *Id.* at 168[4].

When the trial court has received conflicting or contradictory evidence, we view the facts in the light most favorable to the juvenile court's judgment. *Id.* at 168.

■ " 'In any termination of parental rights, the primary concern must be the best interests of the child.' The existence of even one statutory ground for termination is sufficient if termination is in the child's best interests." *In re Interest of A.K.L.*, 942 S.W.2d 953, 955 (Mo.App.1997) (citations omitted). Notably, Father does not contend, either in his point relied on or in the argument portion of his brief, that the trial court erred in concluding that "the termination of parental rights of [Father] ... in, to and over the minor child, [S.L.J.], ... would be in the best interests of said child[ ]." Consequently, we need consider only whether any one of the three grounds found by the juvenile court is supported by the evidence.

■ We begin and end our consideration of Father's point with the ground of abandonment, § 211.447.2(1). In relevant part, that provision provides:

"2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer ... if the court finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that *one or more* of the following grounds for termination exist:

"(1) The child has been abandoned. The court shall find that the child has been abandoned if, for a period of six months or longer ... :

"(a) The parent has left the child under such circumstances that the identity of the child was unknown and could not be ascertained, despite diligent searching, and the parent has not come forward to claim the child; or

"(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or commu-

nicate with the child, although able to do so[.]"

The juvenile court based its finding of abandonment on § 211.447.2(1)(b). To prove a case of abandonment under that provision, the juvenile officer must show by clear, cogent, and convincing evidence "that the parent, without good cause, (1) 'left the child without any provision for parental support' and (2) 'without making any arrangements to visit or communicate with the child, although able to do so.'" *In re Interest of Baby Girl W.*, 728 S.W.2d 545, 547 (Mo.App.1987).

Father's own testimony clearly established that he failed to provide any support for S.L.J. Father attempts to excuse his failure to provide support by emphasizing that "most of the time" he earned only $7.50 per month in prison. Similar arguments have been repeatedly rejected by our courts.

"[S]ubstantially reduced wages received by an incarcerated parent do not excuse his obligation under section 211.447 to make monetary contributions toward support of his child. While such a contribution from an incarcerated parent will not significantly assist in providing the child with essentials, even a minimal contribution evinces a parent's intent to continue the parent/child relationship. Evidence of this intent is lacking, however, where a parent fails to make any contribution, no matter how diminutive the amount."

*In re Interest of R.K.*, 982 S.W.2d 803, 807 (Mo.App.1998) (citations omitted). Father also seeks to overcome the juvenile court's finding that he failed to provide support for S.L.J. by contending that he was never ordered to pay child support. "It is immaterial that the State never requested that Father contribute to the support of his children. Support of minor children is a continuing parental obligation." *In re Interest of T.G.*, 965 S.W.2d 326, 335 [25, 26] (Mo.App.1998). *See In re Interest of M.B.A.*, 709 S.W.2d 941, 947 (Mo.App. 1986). Consequently, we conclude the evidence clearly established that Father, without good cause, failed to provide parental support for S.L.J.

The evidence also establishes that Father failed to make arrangements to visit or communicate with S.L.J. Father contends that his occasional cards and letters were sufficient to avoid a finding of abandonment. In rejecting this contention, we again observe that Father has spoken with S.L.J. only once on the telephone (when she was only two years old) and has never met her in person. Aside from the one telephone contact, Father's cards and letters are the only contact he has had with S.L.J. Rule testified that Father sent cards and letters for birthdays and holidays. Father testified that he sent cards and letters for "[b]irthdays, holidays, and other times other than just birthdays and holidays," though he also admitted that he "wasn't consistent" in sending cards and letters.

"Incarceration ... does not discharge a parent's statutory obligation to provide his child with a continuing relationship through communication and visitation, and parental rights may be terminated while the parent is incarcerated.

"A parent is not allowed to maintain only a superficial or tenuous relationship with his child in order to avoid a determination of abandonment. Consequently, a trial court is free to attach little or no weight to infrequent visitations or communications. § 211.447.4. In fact, courts may regard such efforts as token and terminate parental rights despite their existence."

*R.K.*, 982 S.W.2d at 806 [8, 10] (case citations omitted). We believe Father's contact with S.L.J. via infrequent cards and letters is superficial or tenuous, at best. Accordingly, we conclude that this record contains clear, cogent, and convincing evidence to support the juvenile court's finding that father has failed to communicate with S.L.J. though able to do so. Consequently, the juvenile court's finding of abandonment under § 211.447.2(1)(b) is

supported by clear, cogent, and convincing evidence.

Father relies heavily on *Baby Girl W.*, 728 S.W.2d 545 (Mo.App.1987), for his argument that the juvenile officer failed to produce clear, cogent, and convincing evidence of any ground supporting termination of Father's rights in, to, and over S.L.J. In *Baby Girl W.*, the western district of this court reversed a juvenile court judgment terminating the father's parental rights on the ground of abandonment. *Id.* at 546. Briefly, the facts were as follows:

"[*Baby Girl W.*] concerns a mother who concealed from the natural father the fact of his child's birth. Baby Girl W.'s father made unavailing efforts to locate the mother during the prenatal period, but did not learn of the child's birth until after his imprisonment, which continued throughout the termination proceedings. When first notified of the child's birth, the father actively opposed termination of his parental rights. The father testified at the termination hearing. According to an affidavit presented in the case the father had no assets or income. The juvenile officer presented no contrary evidence showing the father's ability to contribute to the child's support. In terminating the father's parental rights, the juvenile court laid particular stress on his incarceration. This court reversed the order of termination finding that the father had good cause for his failure to provide support and visit the child because the mother's conduct frustrated any possibility for the father to learn of his parental obligation. The Baby Girl W. case turned on the mother's concealment of the child's birth, which left the father without the means to discover the child's existence."

*In re Interest of C.R.*, 758 S.W.2d 511, 513 (Mo.App.1988) (citations omitted). While the facts of the case at bar bear some resemblance to those of *Baby Girl W.*, the two cases can be distinguished in two important respects. First, there was no evidence presented in this case that Mother intentionally concealed her pregnancy and S.L.J.'s birth from Father. The western district placed great emphasis on the fact that the mother had intentionally concealed the child's birth in *Baby Girl W.* The western district, itself, has limited the applicability of the ruling in *Baby Girl W.* to its unique set of facts. *See C.R.*, 758 S.W.2d at 513 (stating that "*Baby Girl W.* presents a 'unique fact situation' " and that "[t]he import of *Baby Girl W.* should not be extended beyond its unusual circumstances"). Second, while in *Baby Girl W.* there was uncontradicted evidence that the father had no income or assets, here, Father's own testimony established that he had an income of $7.50 per month "most of the time." Nevertheless, Father failed to provide even nominal support for S.L.J. This is significant for the reasons already explained. *See R.K.*, 982 S.W.2d at 807[12]. For these reasons, we find that *Baby Girl W.* is unavailing to Father.

Father's point is denied. The judgment of the juvenile court terminating Father's parental rights in, to, and over S.L.J. is affirmed.

CROW, P.J., PARRISH, J., concur.