**In the Interest of M.L.K. (a male minor).**

**Forestal LAWTON, Juvenile Officer, Respondent,**

v.

**C.B. (Mother), Appellant.**

**Lori Stipp, Guardian Ad Litem.**

**WD 42779.**

Missouri Court of Appeals, Western District.

Jan. 29, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 1991.

Christine Sill–Rogers, Stinson, Mag & Fizzell, Kansas City, for appellant.

Carol S. Buchanan and Anne E. Rauch and Lori Stipp, Guardian ad Litem, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

The natural mother, C.B., appeals the judgment terminating her parental rights in her minor son, M.L.K., born July 14, 1983. On appeal, C.B. contends that the trial court erred in determining that she abandoned M.L.K. pursuant to § 211.447, RSMo 1986. The trial court's judgment is affirmed.

M.L.K. was removed from the home of his natural mother and placed in foster care on March 8, 1988, the date C.B. commenced incarceration in the Jackson County Jail. A petition for termination of parental rights was filed on November 8, 1988, alleging abandonment and abuse as bases for terminating C.B.'s parental rights in M.L.K. On March 31, 1989, a first amended petition for termination of parental rights was filed alleging abandonment as the sole basis for terminating C.B.'s parental rights.

Pursuant to Missouri law "[p]arental rights may be terminated involuntarily when it appears that the termination would be in the best interest of the child and it appears by clear, cogent, and convincing evidence that any one or more of the statutory conditions contained in Section 211.447 is met." *In re H.K.*, 762 S.W.2d 465, 467 (Mo.App.1988). Regarding abandonment, § 211.447.2 provides in pertinent part:

> (1) ... The court shall find that the child has been abandoned if, for a period of six months or longer for a child over one year of age or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition:
>
> ....
>
> (b) The parent has without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so; ....

The trial court determined that C.B. abandoned M.L.K. pursuant to these provisions of § 211.447.2(1)(b). In reviewing the trial court's decision, this court shall view the facts and the reasonable inferences therefrom in the light most favorable to the trial court's order. *In Interest of B.A.F.*, 783 S.W.2d 932, 933 (Mo.App.1989).

The six month period during which C.B. allegedly abandoned M.L.K., as required pursuant to § 211.447, was from May 8, 1988, to November 8, 1988. The natural mother's incarceration in the Jackson County Jail commenced March 8, 1988, and continued until April 8, 1988. C.B. was offered weekly visitation with M.L.K. while

incarcerated in the Jackson County Jail. The last visit between the mother and child at the jail occurred on March 31, 1988. On April 8, 1988, a visit was scheduled but C.B. was released from the jail prior to the visit and failed to notify the Department of Family Services (DFS) of her release. Visitation was also offered to C.B. for the week of April 11, 1988, but she declined the visit.

On April 18, 1988, M.L.K. was placed in the care of the psychiatric unit of the University of Kansas Medical Center for evaluation. C.B. indicated to her DFS caseworker that she would visit M.L.K. in the hospital the week of April 18, 1988. C.B. failed to attend this visitation. C.B. arrived for a scheduled visitation on May 3, 1988, ninety minutes late and was informed that visitation would have to be rescheduled due to her tardiness.

On May 30, 1988, while C.B. was participating in a NARA inpatient program at a halfway house, she absconded from the halfway house. On July 8, 1988, C.B. contacted DFS requesting visitation with M.L.K., but it was not arranged at that time because C.B. refused to provide DFS with information regarding her whereabouts. C.B. made no further contact with DFS and her whereabouts remained unknown until August 18, 1988, when C.B.'s probation officer contacted DFS to inform them that C.B.'s probation was revoked and a four-year sentence executed.

From August 18, 1988, until the time of the hearing, C.B. remained incarcerated. On November 5, 1988, and November 16, 1988, C.B. sought assistance from the Director of Parent and Children's Services at Chillicothe Correctional Center in contacting her son. Between November 5, 1988, and November 16, 1988, the Director of Parent and Children's Services attempted to contact the DFS caseworker without success. On November 29, 1988, the Director finally made contact with the DFS caseworker and requested a visit on behalf of C.B. The request for visitation was denied due to the fact that the guardian ad litem had recommended against visitation and the fact that a petition for termination of parental rights was pending before the court.

On April 20, 1989, C.B. contacted the DFS caseworker by mail. The DFS caseworker again denied C.B.'s request for visitation and refused, based on a therapeutic recommendation, to give M.L.K. cards or letters at that time. DFS later agreed to give M.L.K. any cards or letters from C.B. and from May 8, 1989, until the time of the hearing C.B. sent eighteen correspondences to M.L.K.

The parties stipulated to the evidence before the Juvenile Division of the Circuit Court of Jackson County. The trial court determined that C.B. had abandoned M.L.K. pursuant to § 211.447. The court further determined that the mother's one request for visitation during the statutory six-month period was token in nature, particularly in view of the fact that the mother refused to reveal her whereabouts so that visitation could be arranged. The trial court also found C.B.'s other contact with the child, made after the petition for termination of parental rights was filed on November 8, 1988, token in nature. C.B. appeals the trial court's judgment.

On appeal, C.B. contends that the trial court erred in terminating her parental rights because (I) no evidence was introduced to support a finding that she possessed the ability to support M.L.K. during the statutory period; (II) no evidence was introduced to show that she was able to visit with M.L.K. during the statutory period and DFS would have denied any visitation requests had they been made; (III) the evidence adduced at trial was insufficient to show that she possessed the ability to maintain some type of contact with M.L.K.; (IV) the evidence adduced at trial was insufficient to establish that she intended to abandon M.L.K.; and (V) she established by clear, cogent, and convincing evidence that she repented any prior abandonment of M.L.K. The trial court's decision is affirmed.

I

For her first point on appeal, C.B. contends that the trial court erred in termi-

nating her parental rights because the juvenile officer failed to present any evidence to support a finding that C.B. possessed the ability to support M.L.K. during the statutory period. C.B. contends that the stipulated evidence demonstrates that she was either unemployed or incarcerated throughout the statutory period.

In particular, C.B. relies upon *In the Interest of Baby Girl W.*, 728 S.W.2d 545 (Mo.App.1987), for the proposition that, lacking evidence to the contrary, incarcerated parents are considered to be incapable of contributing to the support of their children. Appellant's reliance upon *Baby Girl W.* is unfounded. *Baby Girl W.*, presented the unique facts of a mother who concealed from the incarcerated natural father the fact of his child's birth. *Id.* at 546–47. The holding in *Baby Girl W.* has previously been limited to those facts and does not lend support to appellant's contentions. *See In Interest of H.M.*, 770 S.W.2d 442, 444 (Mo.App.1989); *In Interest of C.R.*, 758 S.W.2d 511, 513 (Mo.App.1988).

C.B. contends that while incarcerated she earned only thirty-three cents per day which made her incapable of providing for M.L.K. This court has recognized on previous occasions that incarcerated parents receive only minimal wages. *In Interest of B.A.F.*, 783 S.W.2d at 934. However, the substantially reduced wages received by incarcerated parents do not excuse their obligation under § 211.447 to make monetary contributions towards support of their children. *Id.* Granted, such a contribution from an incarcerated parent will not significantly assist in providing the parent's child with essentials, but even a minimal contribution evinces the parent's intent to continue the parent-child relationship. Evidence of this intent, a central consideration in the court's determination, is lacking when, such as here, the parent fails to make any contribution, no matter how diminutive the amount. Appellant's first point is denied.

## II

■ For her second point on appeal, C.B. contends that the trial court erred because no evidence was introduced to demonstrate that during the statutory period she was able to visit with M.L.K. Specifically, C.B. contends that because she was incarcerated for significant portions of the statutory period she was unable to visit with M.L.K. Additionally, C.B. contends that DFS intended to deny any requested visitation and therefore a finding of abandonment is improper.

Appellant correctly asserts that incarceration alone may not be used as a ground upon which to terminate parental rights. *See In Interest of H.M.*, 770 S.W.2d at 444. However, § 211.447 clearly implies that parents have a duty to provide their children with a continuing relationship through communication and visitation. *Roe v. Ross*, 701 S.W.2d 799, 802 (Mo.App.1985). Incarceration does not excuse a parent's obligation to provide the parent's child with a continuing relationship, and parental rights may properly be terminated while the parent is incarcerated. *See In Interest of B.A.F.*, 783 S.W.2d at 934; *In Interest of H.M.*, 770 S.W.2d at 445. The evidence in this case clearly shows that C.B. was released from the Jackson County Jail, absconded from the halfway house, and was placed into the custody of the Department of Corrections all without making arrangements to visit or communicate with M.L.K. C.B.'s complaint that any requested visitation would have been denied is without merit. Such a request would have demonstrated C.B.'s desire and intent to continue the parent-child relationship, an intent which substantial evidence demonstrates is lacking in this case. Appellant's second point is denied.

## III

■ For her third point on appeal, C.B. contends that the trial court erred in terminating her parental rights because the evidence was insufficient to show that she had the ability to maintain some type of contact with M.L.K. during the statutory period. In particular, C.B. complains that she was not informed of M.L.K.'s whereabouts other than that he was in foster care, that she did not receive the Notice to Incarcerated Parent allegedly sent to her on September

20, 1988, which disclosed the name of the DFS caseworker handling her case, that DFS does not accept collect telephone calls from incarcerated parents, and that DFS refused to provide M.L.K. with correspondences which she sent.

Regardless whether C.B. knew of M.L.K.'s precise whereabouts or the name of the current DFS caseworker, substantial evidence demonstrates that C.B. knew that contact with M.L.K. could be initiated through DFS and that for the six-month period she continually failed to do so. Additionally, the eighteen cards or letters C.B. sent to M.L.K. after May 8, 1989, long after the petition for termination of parental rights was filed, demonstrate that C.B. was capable of contacting M.L.K. while incarcerated. Finally, DFS's refusal to accept collect telephone calls from incarcerated parents does not relieve those parents of their obligation to maintain contact with their children. C.B.'s third point is denied.

### IV

C.B. next contends that the trial court erred because the evidence was insufficient to establish that she intended to abandon M.L.K. In particular, C.B. argues the evidence fails to demonstrate that she intended to abandon M.L.K. because he was in her custody until age four years eight months, she attempted to visit M.L.K. on May 3, 1988, and again on July 8, 1988, and she sought to arrange visitation with M.L.K. on November 5, 1988, and November 16, 1988. Additionally, C.B. argues that the eighteen letters and cards sent after May 8, 1989, demonstrate her intent to continue the parent-child relationship.

Pursuant to § 211.447.4, the trial court is free to attach little or no weight to infrequent visitations or communications. Parents are not allowed to maintain only a superficial or tenuous relationship with their children in order to avoid a determination of abandonment. *In Interest of Gowen,* 610 S.W.2d 319, 320 (Mo.App.1980). Rather, the courts may regard such efforts as token and terminate parental rights despite their existence. *See R.L.P. v. R.M.W.,* 775 S.W.2d 167, 170 (Mo.App.

1989); *In Interest of R.E.C.,* 716 S.W.2d 879, 883 (Mo.App.1986); and *H.D. v. E.D.,* 629 S.W.2d 655, 657 (Mo.App.1982). Additionally, this court must affirm the trial court's judgment unless no substantial evidence supports it, it is against the weight of the evidence or it erroneously declares or applies the law. *In the Interest of B.A.F.,* 783 S.W.2d at 933. The trial court's determination that C.B.'s attempted visitation was token and that C.B. intended to abandon M.L.K. is supported by competent, substantial evidence and not contrary to the overwhelming weight of the evidence. C.B.'s fourth point is denied.

### V

For her final point on appeal, C.B. contends the trial court erred in terminating her parental rights because she claims to have established by clear, cogent, and convincing evidence that she repented any prior abandonment. C.B. is correct in her claim that an abandonment may be repented and terminated. *In Interest of T.H.,* 497 S.W.2d 210, 212 (Mo.App.1973). "Repentance of the abandonment may be determined by the actual or attempted exercise of parental rights and performance of parental duties following the abandonment." *Id.* However, whether there has been a repentance requires an examination of the parent's intent, an inferred fact, determined by considering all the evidence of the parent's conduct. *In re Adoption of W.B.L.,* 681 S.W.2d 452, 455 (Mo. banc 1984). Not every gesture by a natural parent will repent an abandonment. *Id.*

C.B. claims that the eighteen correspondences sent after May 8, 1989, demonstrate her intent to repent the prior abandonment. However, courts view such "after the fact" correspondences with great hesitancy as they are not always consistent with the desire of a parent to establish a relationship with her child. *In Interest of B.A.F.,* 783 S.W.2d at 934. In this case, C.B.'s eighteen correspondences with M.L.K. all came after the petition for termination of parental rights. The trial court may determine that these efforts were token despite the fact that contrary evidence exists. *In*

*re Adoption of W.B.L.*, 681 S.W.2d at 454. The trial court's determination that C.B. had not repented her prior abandonment, and that her efforts following the statutory period were token, is supported by competent and substantial evidence and not against the weight of the evidence. The judgment of the trial court terminating C.B.'s parental rights is affirmed.

All concur.