In the Interest of M.N.M.

STATE of Missouri, Respondent,

v.

G.L.M., Appellant.

No. 19543.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 22, 1995.

Motion for Rehearing and Transfer to
Supreme Court Denied Sept. 5, 1995.

James R. Sharp, Wear, Nelms & Sharp, Springfield, for appellant.

Kay A. Van Pelt, F. Richard Van Pelt, Van Pelt & Van Pelt, P.C., Springfield, for respondent.

MONTGOMERY, Judge.

The Circuit Court of Greene County, Juvenile Division, terminated the parental rights of G.L.M. (Father) and M.N.M. (Mother) with respect to M.N.M. (Daughter). Father appeals. This Court affirms.

Daughter was born on June 8, 1991. Father was incarcerated at the time of her birth. Between 1984 and 1991 Father was convicted of assault, resisting arrest, burgla-

ry, felony possession of marijuana, and felony stealing. In March 1992 Father was released from prison on parole and moved in with Mother and Daughter.

On or about June 1, 1992, the Division of Family Services (DFS) received a hot line call indicating that on May 31, 1992, (seventy-one days after Father was released from prison) in front of several witnesses Father held Daughter at knife point and threatened to kill her, Mother, and himself. As a result, Father was arrested on charges of first degree child endangerment. He pled guilty under the *Alford* Rule [1] and was sentenced to three years' imprisonment on the endangerment charge and for violation of parole. At the termination hearing, Father admitted that he held a knife in his hand at the same time he held Daughter because he was "not going to allow anyone to take [his] daughter from [him]."

On June 2, 1992, the juvenile court entered an order placing Daughter in the care and custody of DFS. Daughter was placed in foster care. The juvenile court held a dispositional hearing on September 25, 1992, and entered an order placing Daughter's physical custody with Mother. Father was not present for this hearing because he was incarcerated. On March 25, 1993, the juvenile court removed Daughter from the physical custody of Mother. Daughter was again placed in foster care. She has remained in foster care since that time. On February 24, 1994, the juvenile court entered an order terminating Father's and Mother's parental rights to Daughter.

In his four points on appeal Father challenges the sufficiency of the evidence supporting the court's order regarding the following findings that: (1) Father abandoned Daughter; (2) Father abused or neglected Daughter; (3) the conditions which led to the assumption of jurisdiction still persist, and there is little likelihood those conditions will soon be remedied so that Daughter can be

---

1. The "*Alford* plea" was born when the United States Supreme Court held that a North Carolina trial judge did not commit constitutional error in accepting a capital murder defendant's guilty plea, even though the defendant simultaneously maintained his innocence. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

returned to Father; and (4) it was in Daughter's best interests that Father's rights be terminated.

In reviewing an order of termination, this Court affirms a juvenile court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or the court erroneously declared or applied the law. Rule 73.01(c); *In Interest of M.H.*, 859 S.W.2d 888, 892 (Mo. App.1993). As this Court reviews the sufficiency of the evidence supporting an order, we consider the evidence and all reasonable inferences in the light most favorable to the order. *Id.* In addition, we give due regard to the juvenile court's opportunity to judge the credibility of witnesses and resolve fact issues. *In Interest of B.C.H.*, 718 S.W.2d 158, 160 (Mo.App.1986). We will reverse the order only when we firmly believe it is wrong. *M.H.*, 859 S.W.2d at 892. In any termination of parental rights, the primary concern must be the best interests of the child. *In Interest of D.D.C. and E.E.C. v. B.C.*, 817 S.W.2d 940, 942 (Mo.App.1991).

Father first contends that the State failed to prove by clear and convincing evidence that he failed to support and communicate with Daughter during the statutory period pursuant to § 211.447.2(1)(b).[2] This section provides that a court can terminate on grounds of abandonment when it finds that for six months or longer a parent has without good cause left the child (1) without any provision for parental support and (2) without making arrangements to visit or communicate with that child, although able to do so.

Brenda Parrish, a DFS case worker assigned to this case from July 1992 through July 1993, testified that Father was incarcerated during the entire time she supervised the case. When she was assigned to the case, she notified Father that he must not contact Daughter directly because of his child endangerment charge.[3] She informed Father that if he wanted to maintain a relationship with his child, he must do so through DFS. She kept Father assessed of Daughter's situation and sent him pictures of Daughter and a diary kept by Daughter's foster parents.

Ms. Parrish further testified that Father never requested a treatment plan or asked for suggestions on how he could work toward reunification with Daughter. Father provided no financial assistance or necessities for Daughter's care and maintenance while she was assigned to the case. During Daughter's first period in foster care, a period lasting less than four months, and during some of the time while Daughter was in Mother's custody, from early June through December 1992, Father did send Ms. Parrish three or four letters inquiring about Daughter's welfare. After Daughter was removed from Mother's custody in February 1993, Ms. Parrish received no correspondence from Father. Father did not communicate with Ms. Parrish at any time after Daughter's second removal from the home. For approximately thirteen months after December 2, 1992, until the time of trial, January 24, 1994, Father made no attempt to contact anyone at DFS concerning Daughter.

Another DFS caseworker, Kurt Huffman, who was assigned to the case from August 1993 until the time of trial, testified that he did not receive any correspondence from Father at any time. While he was assigned to the case, Father contributed nothing towards Daughter's care and maintenance. Mr. Huffman testified that because Father was incarcerated there were no services available to him which would enable him to become a proper parent. Mr. Huffman stated that, even if Father were not in jail, he felt that Father would not benefit from any services which DFS or the juvenile officer could offer. He further testified that he felt the termination of Father's parental rights was in

**2.** Statutory references are to RSMo 1994.

**3.** The DFS workers' testimony indicates that as a result of Father's plea to the child endangerment charge, the trial court may have ordered Father not to contact Daughter directly. We note that the legal file in the present case contains no record of any such order.

Daughter's best interests, that Daughter exhibited no signs of emotional ties or bonding with Father, and that Daughter was adoptable.

Father argues that because he was incarcerated and was subject to a no contact order prohibiting him from directly contacting Daughter he is not responsible for failing to maintain a parent/child relationship with Daughter. The trial court found that Father did not attempt to maintain a relationship with Daughter and exhibited a lack of interest to the commitment and well-being of Daughter without good cause. This Court agrees for the following reasons.

■ During the first six months of a period of over one year and seven months Father inquired a maximum of three or four times about his daughter's welfare. The trial court is free to attach little or no weight to infrequent communications. § 211.447.4; *In Interest of M.L.K.*, 804 S.W.2d 398, 403 (Mo. App.1991). A parent's incarceration alone may not be used as grounds upon which to terminate parental rights, § 211.447.3(6), but incarceration does not excuse a parent's statutory obligation to provide the child with a continuing relationship. *Id.* at 402. DFS informed Father that, even though Father was subject to a no contact order concerning Daughter, he could maintain a relationship with Daughter through the caseworker. Father made only a fleeting and minimal attempt to do so. Parents are not allowed to maintain only a superficial or tenuous relationship with their children in order to avoid a determination of abandonment. *M.L.K.*, 804 S.W.2d at 403. Courts may regard such efforts as token and terminate parental rights despite their existence. *Id.*

■ We also note that during Father's incarceration he contributed nothing towards Daughter's support and maintenance. Failure of support may properly be considered in an action for termination of parental rights based upon abandonment, notwithstanding the fact that support was supplied by another source. *In Interest of M.B.A.*, 709 S.W.2d 941, 947 (Mo.App.1986). Father argues that because he made $7.50 per month at the prison laundry he did not have the means to provide any financial aid to Daughter. Substantially reduced wages received by incarcerated parents do not excuse their statutory obligation to make monetary contributions towards the support of their children. *M.L.K.*, 804 S.W.2d at 402. While such contribution from incarcerated parents will not significantly assist in providing the child with essentials, even minimal contribution evinces a parent's intent to continue the parent/child relationship. *Id.* Evidence of this intent is lacking when the parent fails to make any contribution, no matter how diminutive the amount. *Id.* There is ample evidence here to support the trial court's finding of abandonment.

■ We need not address Father's second and third points concerning the issue of abuse and neglect and whether the conditions which led to the assumption of jurisdiction still persist. A juvenile court may terminate parental rights when it finds that doing so is in the child's best interests and when it appears by clear, cogent and convincing evidence that one or more statutory grounds for termination exist. § 211.447.2. The existence of even one statutory ground for termination is sufficient if termination is in the child's best interests. *In Interest of L__ E__ E__*, 839 S.W.2d 348, 352 (Mo.App.1992).

■ In Father's final point, he argues that the record does not support the trial court's finding that it was in Daughter's best interests to terminate Father's parental rights. We are not persuaded. The record reflects that because of Father's many incarcerations he was with Daughter for a total of seventy-one days of her life. He admitted holding Daughter in one hand while holding a knife in the other in order to prevent anyone from taking her from him. Father submitted an *Alford* plea to a charge of child endangerment. He admitted he lacked parenting skills. Father has a long history of leading an unstable, violent, and criminal lifestyle. No evidence demonstrates that Father has

any sense of commitment toward Daughter. He contributed nothing towards her care or maintenance and exhibited a lack of concern for her well-being. Daughter displayed no signs of emotional ties or bonding with Father. Nothing in the record hints that any of the above conditions are likely to change. Under these facts, we are left with the clear conviction that the best interests of Daughter would be served by terminating Father's parental rights and allowing her to be adopted into a stable home.

The judgment is affirmed.

SHRUM, C.J., and FLANIGAN, J., concur.