982 S.W.2d 803 (1998)
In the Interest of R.K., Respondent,
Juvenile Officer, Respondent,
v.
R.D.K.(Natural Father), Appellant.
No. WD 55090.
Missouri Court of Appeals, Western District.
December 22, 1998.
*805 Edward L. Pendleton, Kansas City, for appellant.
Katherine Jean Rodgers, Kansas City, for respondent.
Before ROBERT G. ULRICH, P.J., and JAMES M. SMART, J., and EDWIN H. SMITH, J.
ULRICH, Presiding Judge.
R.D.K. (FATHER) appeals the judgment of the trial court terminating his parental rights in his minor son, R.K., born March 18, 1988. He contends that the court erred in determining that he abandoned the child pursuant to section 211.447.2(1).[1] The judgment of the trial court is affirmed.
On February 9, 1996, the Division of Family Services (DFS) received a hot line call regarding R.K. and his sister, A.B.[2] The hot line alleged sexual abuse of both children, who were living with their mother, K.B. (MOTHER), at the time. A Safe Exam of A.B. conducted the next day revealed evidence of sexual abuse of A.B. On February 13, 1996, R.K. was placed in the home of his paternal grandmother, A.C. (GRANDMOTHER), and A.B. was placed in foster care. The children were returned to the custody of MOTHER on February 23, 1996, as part of a family preservation program.
On March 6, 1996, R.K. and A.B. were again removed from MOTHER's home. R.K. entered the jurisdiction of the family court on March 7, 1996, pursuant to the filing of a first amended petition. The petition alleged that R.K. was without proper care, custody, and support in that he and his sister, A.B., were repeatedly sexually abused while in MOTHER's custody and that MOTHER did nothing to protect the children from the abuse. R.K. was again placed in GRANDMOTHER's custody, and A.B. returned to foster care where she has remained since.
A year later, on March 19, 1997, R.K. was removed from GRANDMOTHER's home and ordered into DFS custody for foster care placement. On March 24, 1997, he was reunited with his sister in the foster home of Mr. and Mrs. C.J. (FOSTER PARENTS).
A first amended petition for termination of parental rights in R.K. was filed in this case on May 28, 1997, seeking to terminate the parental rights of FATHER, who had been incarcerated since 1993 on an involuntary manslaughter conviction, and MOTHER. Following a hearing on the petition, the trial court entered its judgment terminating the parental rights of FATHER and MOTHER in R.K. on October 7, 1997. From this judgment, FATHER appeals.
The trial court's decision to terminate parental rights will be affirmed on appeal unless the record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law. In Interest of M.N.M., 906 S.W.2d 876, 878 (Mo.App. S.D.1995). The appellate court will reverse the judgment of trial court terminating the parental rights of a party only when it firmly believes that the judgment is wrong. Id. In reviewing the trial court's decision, the appellate court views the evidence and its reasonable inferences in a light most favorable to the decision. Id. The appellate court also defers to the trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence. Id.
*806 A trial court may terminate parental rights to a child where it finds that the termination is in the best interests of the child and where it appears by clear, cogent, and convincing evidence that one of the grounds for termination under section 211.447.2 exists. § 211.447.2; In Interest of W.S.M., 845 S.W.2d 147, 150 (Mo.App. W.D. 1993). "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." W.S.M., 845 S.W.2d at 150 (quoting In Interest of J.M., 815 S.W.2d 97, 101 (Mo.App. W.D.1991)).
In this case, the trial court terminated the parental rights of FATHER in R.K. based on three statutory grounds, sections 211.447.2(1), (2), and (3). Section 211.447.2(1) provides for termination of parental rights if the child has been abandoned. Parental rights are terminated under section 211.447.2(2) if the child has been adjudicated to have been abused or neglected. Finally, section 211.447.2(3) provides for the termination of parental rights if the child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist. Because the existence of but one of the statutory grounds is a sufficient condition for termination of parental rights, provided termination is in the best interests of the child, review of the trial court's findings regarding the particular ground set forth in section 211.447.2(1) is all that is necessary in this case. In Interest of L.M., 807 S.W.2d 195, 199 (Mo.App. W.D. 1991); In Interest of H.J.P., 669 S.W.2d 264, 273 (Mo.App. S.D.1984).
Section 211.447.2(1) provides in pertinent part:
2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exists:
(1) The child has been abandoned. The court shall find that the child has been abandoned if, for a period of six months or longer for a child over one year of age or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition:
(a) The parent has left the child under such circumstances that the identity of the child was unknown and could not be ascertained, despite diligent searching, and the parent has not come forward to claim the child; or
(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so.
§ 211.447.2(1). Abandonment is defined as the voluntary and intentional relinquishment of custody of a child with the intention that the severance be of a permanent nature or as the intentional withholding by a parent of his care, love, protection and presence without just cause or excuse. C.B.L. v. K.E.L., 937 S.W.2d 734, 737 (Mo.App. E.D.1996); In Interest of W.F.J., 648 S.W.2d 210, 215 (Mo. App. W.D.1983). Incarceration alone shall not be grounds for termination of parental rights. § 211.447.3(6); M.N.M., 906 S.W.2d at 879; In Interest of M.L.K., 804 S.W.2d 398, 402 (Mo.App. W.D.1991). Incarceration, however, does not discharge a parent's statutory obligation to provide his child with a continuing relationship through communication and visitation, and parental rights may be terminated while the parent is incarcerated. M.N.M., 906 S.W.2d at 879; M.L.K., 804 S.W.2d at 402.
A parent is not allowed to maintain only a superficial or tenuous relationship with his child in order to avoid a determination of abandonment. M.N.M., 906 S.W.2d at 879; M.L.K., 804 S.W.2d at 403. Consequently, a trial court is free to attach little or no weight to infrequent visitations or communications. § 211.447.4. In fact, courts may regard such efforts as token and terminate parental rights despite their existence. *807 M.N.M., 906 S.W.2d at 879; M.L.K., 804 S.W.2d at 403.
Furthermore, substantially reduced wages received by an incarcerated parent do not excuse his obligation under section 211.447 to make monetary contributions toward support of his child. M.N.M., 906 S.W.2d at 879; M.L.K., 804 S.W.2d at 402. While such a contribution from an incarcerated parent will not significantly assist in providing the child with essentials, even a minimal contribution evinces a parent's intent to continue the parent/child relationship. Id. Evidence of this intent is lacking, however, where a parent fails to make any contribution, no matter how diminutive the amount. Id.
In this case, clear, cogent, and convincing evidence revealed that the termination of FATHER's parental rights in R.K. is in the best interests of the child and that FATHER abandoned R.K. FATHER has been incarcerated since 1993 on consecutive seven and three-year sentences for involuntary manslaughter and armed criminal action, respectively. Prior to this incarceration, FATHER engaged in a pattern of criminal activity. In 1988, he pleaded guilty to the felony of stealing over one hundred fifty dollars. In 1989, he pleaded guilty to the felonies of attempted forgery and forgery and served approximately one year in the Kansas Department of Corrections. This volitional criminal activity has resulted in the separation from and lack of support of R.K. by FATHER. While incarcerated, FATHER has had only a token amount of visitation and communication with R.K. Additionally, although FATHER testified at the hearing that he earned between $7.50 and $11.50 per month, he has contributed nothing toward the support and maintenance of R.K., even a diminutive amount, to demonstrate a continuing commitment to the child.
Furthermore, although FATHER's desire was that R.K. be placed with GRANDMOTHER until FATHER's release from prison, such placement was not in the best interests of the child. Evidence revealed that while living with GRANDMOTHER, R.K.'s medical, dental, emotional, and educational needs were not being met. He developed an advanced case of ringworm on his left shoulder, his mouth was full of cavities, and in his memory, his hair had never been washed. He was "sullen, withdrawn, and at times depressed." Additionally, R.K.had a very negative attitude towards school and his ability to function therein, and as a result, his school work suffered tremendously. Despite recommendations of social workers, GRANDMOTHER failed to provide R.K. with health insurance or enroll the child with a reading tutor. After his placement in FOSTER PARENTS' home with his sister, A.B., however, R.K.'s attitude and school work improved dramatically. R.K.'s therapist reported that his placement with FOSTER PARENTS was "one of the very best placement moves" she had ever seen, and that FOSTER PARENTS' home provides R.K. with "structure, care and nurturing." Evidence also revealed that FOSTER PARENTS are willing to adopt R.K. and his sister. Such evidence can be considered by the trial court in concluding that termination of parental rights is in the best interest of the child. See In Interest of R.H.S., 737 S.W.2d 227, 236 (Mo.App. W.D.1987)(where court considered evidence that an adoption referral had been made for child and his three siblings to be adopted together in terminating defendant's parental rights in child). The termination of FATHER's parental rights in R.K., therefore, was in the child's best interests.
The trial court did not err in finding that FATHER abandoned R.K. under section 211.447.2(1) and in terminating his parental rights. The judgment of the trial court is affirmed.
All concur.
NOTES
[1] All statutory references are to RSMo 1994 unless otherwise indicated.
[2] A.B. was born on September 29, 1989 and is R.K.'s half-sister. R.D.K. is not her father.