In the Matter of E.F.B.D., a child under seventeen years of age.

W.H. and K.H., Petitioners–Respondents,

v.

Lawrence County Juvenile Office, State of Missouri, Respondents,

and

S.B., Respondent–Appellant.

No. 25940.

Missouri Court of Appeals, Southern District, Division One.

July 8, 2004.

Bryan O. Wade, Ginger K. Gooch, Husch & Eppenberger, LLC, Springfield, for Appellant.

Amy L. Box, Randall, Boxx & Masri, P.C., Monett, for Respondents.

PHILLIP R. GARRISON, Judge.

Appellant, S.B. ("Father"), the biological father of E.F.B.D., appeals the termination of his parental rights by the juvenile court of Lawrence County (the "juvenile court"). *See* § 211.447.[1] On appeal, Father argues that the juvenile court's ruling was against the weight of the evidence and, therefore, was in error. For the reasons that follow, we agree and find it necessary to reverse with respect to the termination of Father's parental rights and to the subsequent adoption of E.F.B.D. by W.H. and K.H. ("Respondents").

The record reveals that E.F.B.D. was born on June 18, 1993, to Father and P.C. ("Mother").[2] Though Father and Mother were never married, Father had E.F.B.D. on alternate weekends from the time of her birth until the time she was approximately fourteen months old. During that time period, Father supplied diapers, health insurance, and other support for E.F.B.D. Following a routine visit in August of 1994, Father unsuccessfully attempted to retain custody of E.F.B.D., and Mother thereafter left the area with E.F.B.D. According to Father, he attempted to locate Mother and E.F.B.D. by contacting the Division of Family Services ("DFS") for a period of years, but was unable to ascertain their whereabouts.

In 1996, the Division of Child Support Enforcement ("DCSE") and Mother filed a petition to establish paternity of E.F.B.D.; to change the child's last name; and, to establish a child support order.[3] According to Father, he was never served with papers in that action and had no knowledge of it until the present proceedings began; however, Mother testified that she did receive child support payments from Father through DCSE in 1997.

On March 21, 2001, E.F.B.D. and her half-siblings were taken into protective custody and DFS was awarded temporary legal and physical custody due to an extensive history of abuse and neglect at the hands of Mother.[4] Though Father's name

1. Statutory references are to RSMo 2000, unless otherwise indicated.

2. As Mother does not appeal the juvenile court's decision, we will hereinafter only recount those findings and facts relevant to the termination of Father's parental rights.

3. Mother petitioned to have E.F.B.D.'s last name changed to that of her deceased husband, who was also the father of her three older children. The record reveals that Moth-

er told E.F.B.D. that her father was Mother's deceased husband.

4. It appears that Mother has an extensive history of involvement with DFS that dates back to 1993. While it is unnecessary to detail the specifics here, we note that all of Mother's eight children have been removed from her custody due to "numerous child abuse/neglect reports that include allegations of sexual abuse, supervision by alleged sexual perpetrators, lack of supervision, unsanitary

appears on the petition, he maintains that he never received notice of the petition or the subsequent March 23, 2001, hearing on the matter.

In April of 2001, E.F.B.D. was placed by DFS in foster care with Respondents. Around this time, Father learned that he had been named as E.F.B.D.'s father on her birth certificate. Father and his mother ("Grandmother") then traveled to Greene County, Missouri, where they received copies of the court records relating to E.F.B.D. and also talked with her court appointed guardian ad litem, Scott Pettit ("Pettit"). It was at this time that Father discovered that E.F.B.D. was in DFS custody. On April 30, 2001, Father and Grandmother met with E.F.B.D.'s DFS caseworker, Brandi Parris ("Parris"). During their meeting with Parris, both Father and Grandmother requested that E.F.B.D., as well as her half-sister, L.D., be placed in their custody. Parris requested a home study relating to Father and Grandmother, and informed Father that he would need to begin paying the child support that had previously been ordered by the court and he would also need to complete a DFS "Written Service Agreement." Parris testified that at first she considered Father to be a placement option for E.F.B.D., but she changed her mind when she discovered that there was an ongoing sexual abuse investigation against Father in Cass County, Missouri.[5] Father attended a Family Support Meeting on May 31, 2001, but failed to allow a home study until July 8, 2002.

On December 19, 2001, Father entered into his "Written Service Agreement" with DFS. Thereafter, he began sending gifts to both, E.F.B.D. and L.D., as well as calling DFS on a weekly basis. Father had two visits with E.F.B.D., but his visitation was suspended after E.F.B.D. reported to her psychologist, Amy Merriweather ("Merriweather"), that she was uncomfortable with the way Father shook her hand. Merriweather requested that visitation be suspended because E.F.B.D. was "overwhelmed and somewhat confused by [Father's] efforts to integrate her into his family" and "is making no progress toward and expresses no interest in developing a father/daughter relationship with [Father]." Thereafter, DFS requested that Father stop sending gifts to E.F.B.D. and L.D. Though Father was paying $40 per week in child support arrearages at the time of the trial, he was over $17,000 behind in his payments. Per his agreement with DFS, Father had a psychological evaluation performed on February 19, 2002, by Dr. Gregory Sisk ("Sisk"). Sisk expressed many concerns about placing E.F.B.D. in Father's care, including "blended family issues," his lack of a relationship with the child, her special needs arising from her previous family situation, and the sexual abuse investigation against Father. Sisk ultimately did not recommend that E.F.B.D. be placed with Father in the near future and determined that "it is likely to take considerable time for [Father] to reassure others that he could adequately meet [E.F.B.D.'s] needs, and the court needs to consider [Father's] rights versus the fairness of requiring [E.F.B.D.] to linger in foster care for a long period of time."

On August 2, 2002, Respondents, joined by DFS, filed a petition to terminate Fa-

---

living conditions, head lice, medical neglect, exposing the children to illegal drugs and failure to thrive."

5. The sexual abuse allegations against Father stemmed from two separate hotline calls al-

leging that he sexually fondled his fiancee's daughter. The child, who is now his stepdaughter, has since denied that any abuse happened and there were no charges filed.

ther and Mother's parental rights and to adopt E.F.B.D. With regard to Father, the petition stated as follows:

a. The parents have abandoned the children for a period of at least six months and have failed to provide any support for the minor children for at least that length of time. Although [Father] has begun paying child support more recently, he is presently approximately $17,000[ ] in arrears on his child support obligation. Further, the said [Father], has been absent from the child's life for some eight years prior to her coming into the custody of [DFS].

. . . .

e. Supervised visitation has ceased due to the behaviors of the children and lack of cooperation on the parents' part.

Following two days of trial, the juvenile court entered an order on September 25, 2003, maintaining legal custody of E.F.B.D. with DFS and setting the matter for a review hearing in four months; however, on October 9, 2003, the juvenile court entered its judgment and order terminating both Mother and Father's parental rights. Specifically, the juvenile court found:

2. Pursuant to Section 211.447.2, the child has been in foster care for at least fifteen of the most recent twenty-two months and the juvenile office and division of family services have been joined as parties herein.

3. The Court finds, pursuant to [Section] 211.447 that grounds exist for the termination of the parental rights of both parents, the child is not presently being cared for by a relative, there are no compelling reasons for determining that the termination of parental rights of the parents herein would not be in the best interest of the minor child and the family of the child has received services as provided for in Section 211.183.

4. The Court finds that termination of the parental rights of [Father] and [Mother] is in the best interest of the child because the evidence is abundantly clear and convincing that any reunification with the parents would be emotionally traumatic for the child who has bonded with her sibling and foster parents.

. . . .

6. The Court finds by clear and convincing evidence, specifically with respect to [Father], that: the child was abused and neglected, causing her to come into the care and custody of the Division of Family Services and that the [sic] he has repeatedly and continuously failed to provide the child with adequate support, although physically and financially able to do so and remains over $17,000[ ] in arrears in his child support obligation; that the findings of the psychological evaluation performed upon the father leads the court to believe that the child could not be safely placed in his home in the foreseeable future; that the child has no emotional ties to the natural father as he has been absent from her life since infancy.

7. The court has considered the following statutory factors, as required by [Section] 211.447.6, in rendering its decision herein . . . [.]

8. It is in the best interest of the child that the parental rights of [Father] and [Mother] be terminated.

In addition to terminating the parental rights of Mother and Father, the juvenile court granted Respondents' petition for adoption and ordered that parental consent to the adoption was not required because of the foregoing termination of parental rights. This appeal by Father followed.

Father alleges four points of juvenile court error. First, he contends that the juvenile court erred in terminating his parental rights on the basis of abuse and neglect under Section 211.447.4(2),[6] because abandonment, Section 211.447.2,[7] not abuse and neglect, was the basis for termination plead in the petition. Second, Father asserts that in terminating his parental rights on the basis of abuse and neglect, the juvenile court failed to consider the four statutory factors required under Section 211.447.4(2)(a-d). Third, he argues that the juvenile court erred in terminating his parental rights on the basis that E.F.B.D. had been in foster care for at least fifteen of the most recent twenty-two months. Fourth, he asserts that the juvenile court erred in allowing E.F.B.D. to be adopted by Respondents, because his parental rights were unlawfully terminated and he did not consent to the adoption.

The decision of the juvenile court to terminate parental rights will be affirmed on appeal unless the record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the juvenile court erroneously declares or applies the law. *In the Interest of R.K.*, 982 S.W.2d 803, 805 (Mo. App. W.D.1998). An appellate court will reverse the judgment of the juvenile court terminating the parental rights of a party only when it firmly believes that the judgment is wrong. *Id.* In reviewing a juvenile court's decision, an appellate court views the evidence and its reasonable inferences in a light most favorable to the decision. *Id.* An appellate court also defers to the juvenile court's ability to determine the witnesses' credibility and to choose between conflicting evidence. *Id.*

■ A court may terminate parental rights to a child where it finds that the

6. Section 211.447.4 states in pertinent part:

> The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
>
> . . . .
>
> (2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
>
> (a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
>
> (b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;
>
> (c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the

child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

> (d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development;

7. Section 211.447.2 states in pertinent part:

> 2. Except as provided for in subsection 3 of this section, a petition to terminate the parental rights of the child's parent or parents shall be filed by the juvenile officer or the division, or if such a petition has been filed by another party, the juvenile officer or the division shall seek to be joined as a party to the petition, when:
>
> (1) Information available to the juvenile officer or the division establishes that the child has been in foster care for at least fifteen of the most recent twenty-two months[.]

termination is in the best interest of the child and where it appears by clear, cogent and convincing evidence that grounds exist for the termination as provided by Section 211.447. *Id.* at 806; Section 211.447.2. "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In the Interest of W.S.M.*, 845 S.W.2d 147, 150 (Mo.App. W.D.1993) (quoting *In the Interest of J.M.*, 815 S.W.2d 97, 101 (Mo.App. W.D.1991)).

 "Due process demands that '[t]he petition in a termination of parental rights case should contain allegations likely to inform those persons involved of the charges, to the end that objection may be prepared.'" *In the Interest of D.M.J.*, 683 S.W.2d 313, 314 (Mo.App. S.D.1984) (quoting *In the Interest of W.F.J.*, 648 S.W.2d 210, 216 (Mo.App. W.D.1983)). "For this reason, we have previously recognized that it is necessary to terminate on a ground asserted in the [p]etition." *In the Interest of H.R.R.*, 945 S.W.2d 85, 88 (Mo.App. W.D.1997). An order terminating parental rights must recite the jurisdictional facts and must set out a factual finding of one or more of the conditions for termination appearing in Section 211.447. *In the Interest of W.F.J.*, 648 S.W.2d 210, 216 (Mo.App. W.D.1983). Compliance with the statute is obligatory. *In the Interest of R.S.P.*, 619 S.W.2d 863, 864 (Mo.App. W.D.1981).

 This matter is similar to that found in *In the Interest of J.M.S.*, 83 S.W.3d 76 (Mo.App. W.D.2002). In *J.M.S.*, the father's parental rights were terminated on the basis of abuse and neglect when the petition alleged only abandonment. *J.M.S.*, 83 S.W.3d at 85–87. The court held that this was a violation of the father's due process rights and reversed the termination of parental rights. *Id.* Similarly, in this case, the petition asserted termination of Father's rights was proper because he had abandoned E.F.B.D. under Section 211.447.2, yet the juvenile court terminated his parental rights on the basis that "the child was abused and neglected." While neglect was mentioned in the petition, it was clearly alleging facts that pertained solely to the termination of Mother's rights. The petition made no allegation that Father had neglected, abused, or caused E.F.B.D. to come into the care and custody of DFS, yet these were all reasons for termination asserted in the juvenile court's ruling. The juvenile court did not make a finding that Father had abandoned E.F.B.D. If, as Respondent contends, this case was based on abandonment, the order does not "meet the requirement of [Section] 211.482 because [it] contain[s] no finding of fact that appellant, without good cause, left [E.F.B.D.] without any provision for support and without any communication or visitation. Whether the evidence would support [that] finding[ ], had [it] been made, is not a subject ripe for decision at this time." *W.F.J.*, 648 S.W.2d at 216. The ground on which termination was based was, thus, not the ground on which the petition to terminate was premised. Therefore, the petition, which advocated termination due to abandonment, did not fairly advise Father that he would be required to defend allegations that he had abused and neglected E.F.B.D.

 Respondents argue that even if the abuse and neglect basis was not properly alleged in the petition, it was tried by Father's consent, because he failed to object to such evidence at trial. The court in *J.M.S.* rejected this argument, as do we. When a party does not object to evidence on an issue that is beyond the scope of the pleadings, the pleadings are automatically amended to conform to the evidence and the issue is deemed to be tried by consent.

*In re S.L.N.*, 8 S.W.3d 916, 922 (Mo.App. S.D.2000).[8] The implied consent rule, however, " 'applies only where the evidence presented bears solely upon the unpleaded issue and not upon issues already in the case.' " *Id.* (quoting *Edna Enters., Inc. v. Spirco Envtl., Inc.*, 853 S.W.2d 388, 392 (Mo.App. E.D.1993)). As in *J.M.S.*, any evidence of abuse or neglect here, such as Father's failure to pay child support, was also relevant to whether termination was in E.F.B.D.'s best interest, an issue already in the case. *See J.M.S.*, 83 S.W.3d at 86–87. Therefore, Father cannot be deemed to have consented to this evidence being used against him to terminate his parental rights on grounds not alleged in the petition.

■ Even if the petition had alleged termination under the abuse and neglect standard of Section 211.447.2(3), we would still be required to reverse and remand because the juvenile court failed to make findings on all issues required by Section 211.447.4(2)(a-d). The court is required to make specific findings on each of these factors. *In the Interest of K.T.*, 946 S.W.2d 246, 247 (Mo.App. E.D.1997).

The petition in this case sought termination of Father's rights on the basis of abandonment, under Section 211.447.2. The petition did not fairly advise Father that he would be required to defend against allegations that he had abused and neglected E.F.B.D. under Section 211.447.4(2) and therefore must be reversed. Due to the erroneous termination of Father's parental rights, the subsequent order granting Respondents' petition for adoption also requires reversal. We make no determination on the ultimate disposition of Father's termination of parental rights as to E.F.B.D., and do not intend, by this opinion, to infer that custody of E.F.B.D. should necessarily be granted to Father at this time.

The orders terminating parental rights and granting E.F.B.D.'s adoption are reversed and the case is remanded for further proceedings consistent with this opinion.

BARNEY, P.J., and PREWITT, J., concur.

---

8. We differentiate the present situation from that found in *S.L.N.* In *S.L.N.*, this court found that the parent tried by consent the issue of neglect, though it was not alleged in the petition. *S.L.N.*, 8 S.W.3d at 922. "The basis for the court's holding was its finding that evidence regarding the parent's neglect was 'outside the statutory scope' of either the abandonment or the failure to rectify ground. The court did not state if it considered whether the neglect evidence was relevant to any of the best interest factors." *J.M.S.*, 83 S.W.3d at 76 n. 6. Here, the only evidence of Father's neglect cited by the trial court was his failure to pay child support. The same evidence was then utilized by the trial court in its determination under 211.447.6(7) that termination was in E.F.B.D.'s best interest; therefore, there is a salient difference in *S.L.N.* and that present situation.