200 S.W.3d 599 (2006)
In the INTEREST of I.Q.S. & B.A.L., Plaintiffs.
Juvenile Officer, Missouri Children's Division, Respondents,
v.
E.L.L. (Mother), Appellant,
S.Q.S. (Father), and M.P. (Father), Defendants.
Nos. WD 66571, WD 66572.
Missouri Court of Appeals, Western District.
September 12, 2006.
*601 Frederick P. Tucker, Macon, MO, for appellant.
Lesa L. Bonnett, Macon, MO, for plaintiffs.
James D. McConnell, Shelbina, MO, for respondent, Juvenile Officer.
Gary L. Gardner, Jefferson City, MO, for respondent, MO. Children's Div.
Before JOSEPH M. ELLIS, P.J., ROBERT G. ULRICH, and RONALD R. HOLLIGER, JJ.
ROBERT G. ULRICH, Judge.
E.L.L. appeals from the judgments of the trial court terminating her parental rights to her children, B.A.L. and I.Q.S., pursuant to sections 211.447.4(1) abandonment, 211.447.4(2) abuse and neglect, 211.447.4(3) failure to rectify, and 211.447.4(6)[1] unfit parent. She claims that the judgments were not supported by clear, cogent, and convincing evidence. The judgments are affirmed.

Facts
The appellant, E.L.L. (Mother), is the mother of B.A.L., born July 25, 1998, I.Q.S., born June 27, 1999, and K.L., born May 2, 2002. The father of B.A.L. is M.P. The father of I.Q.S. is S.Q.S. The father of K.L. is T.S. The fathers of the children did not appeal the judgments terminating their parental rights. Mother consented to the termination of her parental rights to K.L. and does not appeal from that judgment.
The children were removed from Mother's custody on August 3, 2003, by Macon County juvenile authorities when she was arrested for DWI and on an outstanding warrant. One-year-old K.L. was in the car with Mother when she was arrested. Kinship placement for the children could not be secured by Children's Services; consequently, the children were placed in foster care in Macon County. The children remained in foster care for over twenty-eight continuous months as computed on the date of the hearing, December 16, 2005.
*602 Mother was charged with a criminal offense and held in the county jail after her arrest. She was released on bond in October 2003. At that time, supervised visits with the children were offered to Mother. On November 18, 2003, Mother was again arrested and held in the county jail for violating conditions of her bond. She remained in jail until January 7, 2004. Upon her release, she was sent to McCambridge Center in Columbia for a thirty-day residential substance abuse treatment program. This treatment was a Level 1 residential treatment consisting of classes, group therapy and individual therapy, and overnight stays. Mother completed the thirty-day residential program and was then ordered to continue outpatient treatment at Jewel Oxford House. Mother, however, quit the program after ten days and was unsuccessfully discharged by the McCambridge Center on March 18, 2004.
Mother lived at various addresses in Columbia during 2004 although her children were in Macon County. She participated in only two supervised visits with B.A.L. and I.Q.S. and missed several scheduled visits citing lack of transportation. Eventually, the children's counselors recommended that contact between Mother and children cease because the children's negative behavior increased after Mother visited them. In June 2004, Children's Services ceased all contact, physical and by phone, between Mother and the children. In July 2004, Mother was ordered to pay child support in the amount of $90 per month per child.
In August 2004, Mother's criminal case was disposed of when she was sentenced to 120-day treatment at the correctional facility in Vandalia. Mother completed the Level 2 treatment program at Vandalia in December 2004 and was placed on probation. She was then ordered to attend aftercare treatment at McCambridge Center from January to March 2005, but she was again unsuccessfully discharged by the Center for nonattendance and noncompliance.
A permanency hearing was held before the court in January 2005, and a dual track of reunification and termination of parental rights was ordered. Supervised telephone contact was allowed between Mother and the children beginning in February. In March, at the post permanency review hearing, the order was changed to termination of parental rights/adoption as a goal.
The petitions for termination of parental rights were filed on May 16, 2005. In July, the court ordered that phone calls from Mother to the children had to be consistent or they would be discontinued. After that order, Mother made the calls consistently every week although the children's foster parents testified that the children did not want to talk to Mother and had more behavior problems after the calls. Mother attended a Level 3 treatment program at the Phoenix House in Columbia. At the hearing on the petitions in December 2005, Mother acknowledged that she chose treatment at the Phoenix House rather than at McCambridge Center because it was "easier and mellower." Although Children's Services received a certificate of completion from the Phoenix House indicating that Mother had completed the program, it never received specific information regarding what its service entailed and what was required of Mother and, therefore, would not acknowledge that Mother successfully completed treatment.
Additional evidence from Children's Services revealed that Mother brought the children a box of clothes in 2004. She made a single child support payment of $75 while the children were in foster care and, at the time of the hearing, owed child support equivalent to $1,500 per child. *603 She never sent the children cards or birthday or Christmas presents. Family support team meetings were held monthly from the time the children entered foster care until the time of the hearing. Written service agreements were completed at each meeting. Of the twenty-five meetings held, Mother attended five in person and five by telephone. A caseworker from the Division testified that the children have no emotional ties to Mother, Mother had made little progress in complying with the written service agreements, Mother's parental rights should be terminated, and if Mother's rights were terminated, the children would be adopted into the home in which they were currently placed. The children's counselors and the guardian ad litem also recommended that Mother's parental rights be terminated.
At the hearing, Mother claimed that since May of 2005, her life had become much more stable and she had secured adequate housing for the children. She tested negative for drugs in several urine analyses performed in 2005. Mother's probation officer reported her stable, and the primary concern was Mother's underemployment. Mother was living with her fiancé in a three bedroom trailer, which was inspected by her Boone County worker and found to be adequate. She met her fiancé at Narcotics Anonymous and acknowledged that he is on probation and has a drug problem. Mother's mother and two sisters also were living at the home, but Mother claimed they would be leaving in January. Mother was self-employed cleaning two houses. She admitted that her income was not adequate to provide for the children but stated that her fiancé works full time and that his income is adequate. She testified that if she does not obtain more houses to clean, she would get a full time job to support the children. Mother acknowledged that before May 2005, she was chemically dependent, was unable to support her children and did not provide for them financially, and made little progress on the written service agreements.
The trial court entered it judgments on January 5, 2006, terminating Mother's parental rights to B.A.L. and I.Q.S. based on four grounds: abandonment, section 211.447.4(1); abuse and neglect, section 211.447.4(2); failure to rectify, section 211.447.4(3); and unfit parent, section 211.447.4(6). This appeal by Mother followed.

Standard of Review
In terminating parental rights, the trial court must find by clear, cogent, and convincing evidence that one or more grounds for termination exists under subsections 2, 3, or 4 of section 211.447 and that termination is in the best interests of the child. § 211.447.5; In the Interest of P.L.O., 131 S.W.3d 782, 788 (Mo. banc 2004), cert. denied, 543 U.S. 896, 125 S.Ct. 100, 160 L.Ed.2d 164 (2004). Review of whether clear, cogent and convincing evidence supports the grounds for termination is governed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). P.L.O., 131 S.W.3d at 788-89. Thus, the trial court's judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. On the question of whether termination is in the best interests of the child, the standard of review on appeal is abuse of discretion. Id. at 789. In all of these determinations, the appellate court is deferential to the trial court's findings of fact and considers all of the evidence and reasonable inferences from the evidence in the light most favorable to the judgment. Id.

*604 Abandonment
Although the trial court terminated Mother's parental rights under four statutory grounds for termination, satisfaction of only one ground is sufficient to sustain the judgment. Id. Thus, although Mother raises several points on appeal regarding the evidence to support each ground, this opinion only addresses the trial court's finding that termination of Mother's parental rights was warranted pursuant to section 211.447.4(1). Section 211.447.4(1) provides that termination is appropriate where the child has been abandoned. Under section 211.447.4(1)(b), a child is abandoned if, "for a period of six months or longer ... [t]he parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so." "Abandonment is defined as the voluntary and intentional relinquishment of custody of a child with the intention that the severance be of a permanent nature or as the intentional withholding by a parent of her care, love, protection and presence without just cause or excuse." In the Interest of J.M.S., 83 S.W.3d 76, 82 (Mo.App. W.D.2002)(quoting In the Interest of R.K., 982 S.W.2d 803, 806 (Mo.App. W.D.1998)). Intent of the parent to abandon the child may be inferred from her conduct. P.L.O., 131 S.W.3d at 789; J.M.S., 83 S.W.3d at 82. "Little or no weight need be given to `infrequent visitations, communications, or contributions.'" P.L.O., 131 S.W.3d at 789; § 211.447.7.
Clear, cogent, and convincing evidence was presented in this case to establish that Mother abandoned B.A.L. and I.Q.S. Although Mother was incarcerated or in residential treatment for periods of time while the children were in foster care, she, without good cause, failed to make arrangements to visit or communicate with or to provide parent support for her children. "[I]ncarceration in and of itself shall not be grounds for termination of parental rights." § 211.447.6(6). Nevertheless, incarceration does not discharge a parent's statutory obligation to provide her child with a continuing relationship through communication and visitation. J.M.S., 83 S.W.3d at 83 (quoting R.K., 982 S.W.2d at 806). Likewise, an incarcerated parent's substantially reduced wages do not excuse her obligation under section 211.447 to make monetary contributions toward support of her child. Id. at 83-84 (quoting R.K., 982 S.W.2d at 807). Although an incarcerated parent's minimal financial contribution does not significantly aid in supporting the child, it demonstrates the "parent's intent to continue the parent/child relationship." Id. at 84.
The evidence revealed that from August 2003, when the children were removed from Mother's custody, until December 2005, the time of the hearing, Mother had only two one-hour supervised visits with B.A.L. and I.Q.S. Mother claimed lack of transportation caused her to miss scheduled visits with the children, yet she voluntarily lived in Columbia while her children were in foster care in Macon County. Before June 2005, her telephone calls to the children were sporadic, and Mother never sent the children any cards or presents. When Mother did have contact with the children, the children did not want to talk to her and had behavior problems afterward leading Children's Services to cease all contact between her and the children at one point.
Furthermore, the evidence revealed that Mother failed to provide parental support for the children. Other than one box of clothes in 2004 and one payment of $75, Mother failed to make payments for the cost of care and maintenance of the children during the twenty-eight months they *605 were in foster care. At the time of the hearing, Mother owed $1,500 per child in child support.
Mother admitted at the hearing that before May 2005, she was chemically dependent, was unable to support her children and did not provide for them financially, and made little progress on the written service agreements. She claimed, however, that since that time, her life had become much more stable. She testified that she had tested negative on several drug tests, maintained regular weekly telephone contact with the children, and secured adequate housing for them. Any short-term improvement in Mother's circumstances that occurred since the filing of the termination petitions, however, is not compelling. In Interest of C.L.W., 115 S.W.3d 354, 358-59 (Mo.App. S.D.2003); In Interest of T.T., 954 S.W.2d 429, 432 (Mo.App. W.D.1997). A parent's conduct after the filing of the petition for termination of parental rights cannot constitute the sole consideration of the court's decision. C.L.W., 115 S.W.3d at 358; T.T., 954 S.W.2d at 432. A court must look at the totality of a parent's conduct both before and after the filing of the petition. C.L.W., 115 S.W.3d at 358. All grounds for termination of parental rights must to some extent look to past conduct because past conduct provides vital clues to present and future conduct. T.T., 954 S.W.2d at 432. Otherwise, a parent may argue that she has reformed since the filing of the petition; reformation having occurred while the child was away. C.L.W., 115 S.W.3d at 358-59; T.T., 954 S.W.2d at 432. As discussed, Mother's history regarding the children included little to no communication or support. She has been drug dependent and was twice unsuccessfully discharged from drug treatment for noncompliance. Of the twenty-five family support team meetings held monthly to work on reunifying the family, Mother attended only five in person and five by telephone. Mother's conduct manifested voluntary and intentional relinquishment of custody of her children with the intention that the severance be of a permanent nature.
Moreover, Mother's circumstances at the time of the hearing weren't ideal regardless of her claim of change. Mother began making phone calls to the children consistently every week only after the trial court ordered in July 2005 that the calls become more consistent or they would be discontinued. She was living with her fiancé, who himself had a drug problem. Her mother and sister were also living with them in the three-bedroom trailer. Additionally, Mother was underemployed, cleaning just two houses, and admitted that she was unable to support the children herself and was financially dependent upon her fiancé. Finally, Mother attended by phone only one of four family support team meetings held between May and September 2005. The trial court's determination that Mother abandoned B.A.L. and I.Q.S. was supported by clear, cogent, and convincing evidence.

Best Interests of the Children
Likewise, the trial court's findings that termination is in the best interests of the children are supported by the evidence. Under section 211.447.6, the trial court must evaluate and make findings on several factors, if appropriate and applicable to the case, when considering whether to terminate the parent-child relationship. Those factors are:
(1) The emotional ties to the birth parent;
(2) The extent to which the parent has maintained regular visitation or other contact with the child;
(3) The extent of payment by the parent for the cost of care and maintenance *606 of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
(5) The parent's disinterest in or lack of commitment to the child;
(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.
§ 211.447.6. The trial court found that B.A.L. and I.Q.S. have few, if any, emotional ties to Mother, Mother has not maintained regular visitation or contact with them, and she has not provided for the cost of care of the children. Instead, Mother has consistently demonstrated a disinterest in or lack of commitment to the children, and additional services would not likely bring about lasting parental adjustment enabling a return of the children to Mother within an ascertainable time. As demonstrated by the facts and discussion above, the record amply supports the trial court's findings. To restate the evidence would be unnecessarily repetitive. Thus, the trial court did not abuse its discretion in finding that termination was in the best interests of the children.
The judgments of the trial court are affirmed.
ELLIS, P.J., and HOLLIGER, J., concur.
NOTES
[1] All statutory references are to RSMo 2000 unless otherwise indicated.